In the Matter of JAMES NAPOLI, Petitioner, *v.* SUPREME COURT OF THE STATE OF NEW YORK et al., Respondents.

First Department, December 12, 1972.

*Gregory J. Perrin* of counsel (*Perrin, Nachman & Stella,* attorneys), for petitioner.

*Michael R. Juviler* of counsel (*Herman Kaufman* with him on the brief; *Frank S. Hogan, District Attorney*), in person.

*Louis J. Lefkowitz, Attorney-General,* for respondents.

Steuer, J. Petitioner moves pursuant to article 78 for an order prohibiting respondents from trying him on indictment 6166/1969, or for any offense charged therein, on the ground that any such trial would amount to subjecting petitioner to being twice put in jeopardy for the same offense.

Petitioner appeared for trial on the said indictment on October 31, 1972, in Part 42 of the Supreme Court. He waived a jury and the trial proceeded before the court and testimony was taken. On November 3, petitioner, who was the defendant and will hereinafter be referred to as such, moved through his counsel for a mistrial on the ground that the District Attorney had withheld exculpatory evidence. There followed a long discussion in which defendant's counsel was challenged to specify the evidence he claimed to be exculpatory. It finally developed that it consisted of statements of several persons to the effect that defendant had not been present at the restaurant at the time the crime charged was alleged to have been committed. The District Attorney disclaimed the possession of any written material executed or signed by any such person, but admitted having heard of statements to that effect. The discussion was not specific as to what the defense claimed existed or as to exactly what material the prosecution possessed. November 3 was a Friday and the court ruled that the District Attorney should give the defense a list of the names and addresses of all persons who had made such statements on the following Monday, and that the court would hear the defendant on what preparation he would require at that time. A list was submitted by the District Attorney and the parties appeared on November 6. At that time the record does not disclose any immediate ruling on the motion for a mistrial but it was apparently assumed by all that the trial would proceed. However, taking of testimony did not resume and there was further discussion as to what the District Attorney should produce. Unable to procure a satisfactory solution to what he deemed an impasse, and fearful that defendant's rights could not be protected, the court granted defendant's motion for a mistrial. The District Attorney noted an exception. Defense counsel, who had taken no part in this last discussion, then announced that he joined in the objection and was willing to proceed. The court adhered to his decision and set a date for a new trial.

We conclude from the record that at the time the court granted the motion for a mistrial the defendant's motion had not been determined or withdrawn. In fact no definitive ruling prior to that time had been announced, and it was not until after

announcement that the defendant indicated that he no longer desired the exculpatory material. It was not only the province of the court, but his duty, to rule on the application. After the ruling it was discretionary with him whether to allow a withdrawal. We are not concerned on this application whether this discretion was exercised as well as it might have been under the circumstances.

Having sought the relief of a mistrial the defendant cannot claim double jeopardy if that relief is granted, whether properly or improperly. But even if it be assumed that there was no viable motion at the time the mistrial was granted, it does not follow that a new trial on the indictment is altogether foreclosed. "The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed." (*Wade* v. *Hunter,* 336 U. S. 684, 688–689.) Whenever the ends of justice might otherwise be defeated it is the duty of the Trial Judge to declare a mistrial. It was early recognized that it was impossible to list all the circumstances which would warrant such action but, if the decision rests on a sound discretion exercised with care and caution, the responsibility is that of the Trial Judge (*United States* v. *Perez,* 9 Wheat. [22 U. S.] 579). Even over the objection of the defendant, the Trial Judge, for any reason he deems compelling, may declare a mistrial and the defense of double jeopardy is unavailing (*Simmons* v. *United States,* 142 U. S. 148). Even where the Trial Judge is over assiduous and his action premature, double jeopardy will not result (*Gori* v. *United States,* 367 U. S. 364). And this has been held even where the record does not clearly reveal the motivation of the Trial Judge in declaring the mistrial (*Gori* v. *United States, supra,* p. 367).

The application should be denied.

MURPHY, J. (dissenting). We disagree and believe that a retrial of this defendant would violate his constitutional right not to be placed twice in jeopardy for the same offense. Petitioner's trial on a pending indictment was commenced on October 31, 1972 before a Trial Judge sitting without a jury and testimony was received. On November 2, defense counsel moved for a mistrial on the basis of an allegedly prejudicial article which had appeared in that day's issue of *The New York Times.*

The Trial Justice advised counsel that he had not read the particular article referred to and volunteered to refrain from reading the *Times* during the pendency of the trial, which then continued. Significantly, in light of later events, the mistrial motion was neither expressly withdrawn nor denied; although all parties obviously assumed it had been completely disposed of. On November 3, the defense again moved for a mistrial, this time because of the prosecution's asserted failure to turn over to defense counsel certain exculpatory material then in its possession, in violation of the rule enunciated in *Brady* v. *Maryland* (373 U. S. 83). A lengthy colloquy ensued during which the prosecutor, *inter alia,* denied possession of any such exculpatory material. In any event, the matter was apparently resolved when the prosecutor agreed to turn over to defendant, on that Friday afternoon, a list of witnesses who might have information of an exculpatory nature. The Trial Justice thereupon stated: "Under the circumstances, I'm reserving decision on the motion for a mistrial.

"Mr. Perrin [defense counsel], if after you have examined this information as submitted by the district attorney, you still feel that you are being prejudiced, the defendant is being prejudiced, I will then hear further arguments, permit further arguments and then I will decide your motion."

Discussions were then held regarding the continuation of cross-examination, the granting of time to defense counsel to examine the list of names supplied and a possible visit to a certain specified restaurant.

It thus appears from the record before us that defendant's second mistrial motion (like the first one) was impliedly denied on the basis of subsequent discussions, albeit this time with leave to defendant to renew on a proper showing of continued prejudice. At the commencement of the next court day, November 6, an unrecorded conference was held at the Bench at which, both sides apparently agree, defendant's attorney advised the court that he had received the requested list of witnesses and that he was prepared to proceed. The list was then offered and received as an exhibit for identification. After reference to another *New York Times* article, a heated discussion ensued between the court and the prosecutor over whether exculpatory material had been withheld. The police witness who had been on the witness stand when the trial was adjourned on the preceding Friday was recalled and questioned by the court regarding possible exculpatory information which had come to his attention.

After the witness was excused, the transcript discloses the following:

"THE COURT: In view of the complexity of this case, and in view of the motions made by the defendant for a mistrial, based upon the fact that the District Attorney's Office had failed to supply the material directed by the Court, by motion and by me, of an exculpatory nature, material of an exculpatory nature, I feel this defendant has been so prejudiced; and accordingly your motion for a mistrial is granted.

"MR. YASGUR [the prosecutor]: May I point out to the Court —

"THE COURT: You may point out anything you wish.

"MR. YASGUR: Counsel at the bench this morning when your Honor informed the Court and both of us, that your Honor was considering the motion for a mistrial, that counsel informed the Court that counsel was fully prepared to proceed this morning, did not wish an adjournment.

"Your Honor seemed to indicate that you believed an adjournment would be requested. None was. Both sides have indicated we are prepared. Counsel hasn't stated that he needs any further time to prepare or that he has been prejudiced.

"Now, your Honor —

"THE COURT: I am addressing —

"MR. YASGUR: Your Honor —

"THE COURT: Don't overshout me, Mr. Yasgur.

"MR. YASGUR: I apologize to the Court.

"THE COURT: I don't feel there is any necessity of further discussion. I am reversing my decision of Friday, because I do feel this defendant has been so prejudiced. So, I am reversing my decision."

The prosecutor, obviously concerned about a possible double-jeopardy claim, then solicited and received a judicial admission that the decision was made on defendant's previously made motion. Defendant thereafter expressed his objection to the mistrial decision, but the court still maintained that it was defendant's motion that was being granted. Despite such ruling, we do not believe a viable motion was then extant. The court set conditions to the granting of the motion, i.e., if the defendant still felt prejudiced after examining the information supplied, then further argument would be permitted and "then I will decide your motion." These conditions were not met. Also, the court apparently considered that it had denied defendant's motion the previous Friday because of the court's language "I am reversing my decision of Friday". Having made such determination the motion would no longer be viable, regardless

of what ensued later on Monday. Both sides believed the matter had been concluded at the Bench conference, if not earlier, and both sides objected to the granting of a mistrial. To hold that defendant's failure to explicitly withdraw his motion bars a double-jeopardy claim would, under the circumstances of this case, clearly exalt form over substance.

If, as we contend, defendant's motion was no longer viable, and the mistrial was declared by the Trial Justice *sua sponte*, without defendant's consent and over his objection, then a lawful retrial may only be had if such trial discontinuance was granted in the sole interest of defendant because the ends of substantial justice could not have been otherwise attained. (Cf. *Gori* v. *United States*, 367 U. S. 364.) Although the courts have consistently refused to delineate the precise circumstances which would permit or preclude a retrial after the declaration of a mistrial without consent, it clearly appears that a "manifest necessity" for such declaration must be shown before another trial is permissible. (*United States* v. *Perez*, 9 Wheat. [22 U. S.] 579; *United States* v. *Jorn*, 400 U. S. 470; *Matter of Nolan* v. *Court of General Sessions*, 11 N Y 2d 114.)

Thus, even if the Trial Justice believed he was acting solely in defendant's behalf, such worthy intent cannot preclude the consequences of his act since "reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action [which the double jeopardy provision was intended to prevent]." (*United States* v. *Jorn, supra,* p. 483).

In the case at bar, there was no compelling need for the Trial Justice to have interjected himself between defendant and his counsel. The material sought by defense counsel had been obtained and he expressed his readiness to proceed with the trial. While we do not, by this dissent, question the Trial Justice's motives in declaring a mistrial, we do conclude that on this record there was no manifest necessity shown for such declaration. Another prosecution would, therefore, violate the double-jeopardy provisions of the Federal and State Constitutions.

Accordingly, we would grant the petition and direct the issuance of the requested writ.

McNALLY and TILZER, JJ., concur with STEUER, J.; MURPHY, J., dissents in an opinion in which STEVENS, P. J., concurs.

Application for writ of prohibition denied, and the petition dismissed, without costs and without disbursements.