■ In the Matter of ARTHUR W. HUNTZINGER, Petitioner, v ANDREW F. SIEDLECKI, as Judge of the County Court of Tioga County, et al., Respondents

— Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to CPLR 506, subd [b], par 1) to prohibit respondents from retrying petitioner for the crime of sodomy in the second degree, on the grounds of double jeopardy. Petitioner seeks a judgment prohibiting his retrial upon an indictment charging him with sodomy in the second degree in violation of section 130.45 of the Penal Law. It appears that at the commencment of the first trial, defendant, a 72-year-old man, appeared in court in a wheelchair, giving rise to objections by the prosecutor who contended that the People's case was prejudiced thereby. Although a physician's report confirming petitioner's infirmities was obtained, the prosecutor continued his objections based on the absence of hospital records and his opportunity to cross-examine the doctor. During the *voir dire,* defense counsel asked one prospective juror the following questions: "A lot of thinking is right. Will you also take into consideration that Mr. Huntzinger is 72 years old. He was married for forty-four years before he was widowed five years ago, and that in the last five years neighbors like Mrs. Rumpf sitting here, have been taking care of him because of his physical considerations. Will you take his physical condition into consideration as far as what this child claims he did? Will you also take into consideration that he has undergone, in the past two and a half years, three major operations? Half of his stomach had been removed. His bladder". The prosecutor's objections to this questioning were sustained by the court which stated that curative instructions were required and would be given to the jury. The prosecutor's motion for a mistrial was initially denied but after jury selection was completed and the jury had been sworn, the court declared a mistrial, despite defense counsel's statement:[*] "May I be heard on the record? I'm not moving for a mistrial, nor am I consenting to a mistrial." On May 19, 1982, the trial court made an order directing a new trial by jury, after which this proceeding was commenced wherein petitioner contends that a new trial will subject him to double jeopardy in violation of the Constitutions of both the United States and New York State. Initially, we note that a claim of double jeopardy is a traditional ground for obtaining the extraordinary remedy of prohibition, which normally lies only where there is an attempt to act without or in excess of jurisdiction (*People v Michael,* 48 NY2d 1, 7). Unquestionably, the double jeopardy clause of the Fifth Amendment of the United States Constitution applies to a declaration of mistrial despite the absence of a final determination of criminal charges by conviction or acquittal (*United States v Perez,* 9 Wheat [22 US 579]). In the case of premature termination by mistrial, however, the right not twice to be put in jeopardy is not absolute, since the defendant's interest in not being retried is weighed against " 'the public's interest in fair trials designed to end in just judgments' " (*United States v Jorn,* 400 US 470, 480). Essentially, our review begins and ends with an analysis of whether the circumstances presented to the trial court indicated a "high degree" of necessity, and a determination of whether the trial court, in finding such necessity, exercised sound, deliberate discretion, including consideration of the viability of alternatives such as granting a trial continuance (see *Arizona v Washington,* 434 US 497, 506-515; *United States v Jorn, supra*). In our review of this record to discern whether "there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated" (*United States v Perez, supra,* p 580). We find that the circumstances prevailing did not require a mistrial. We recognize that a Trial Judge is in the best position to determine whether a mistrial is in

_____

[*] In discussions between counsel and the court not in the presence of the jury, defense counsel protested his inability to subpoena James O. Jackson, Chief of Police, who had signed an accusatory instrument against petitioner in Town Justice Court alleging the basic facts later contained in the indictment and who was unavailable due to illness at time of trial. The court said the mistrial was granted based on "[T]he fact that Jim Jackson was not available also".

fact necessary in a particular case. The trial court is entrusted with discretion in this area, and deference is to be accorded its decision to declare a mistrial (*Matter of Napoli v Supreme Ct. of State of N. Y.*, 33 NY2d 980, affg on opn below 40 AD2d 159; see *Arizona v Washington*, 434 US 497, 513-514; *supra; Gori v United States,* 367 US 364). Nonetheless, it clearly appears that the trial court in this case abused that discretion. The singular instance of misconduct by defense counsel, if indeed it may be deemed misconduct, occurred during examination of a single prospective juror, as set forth above. We do not find the error to have been so egregious as to have irrevocably tainted the impartiality and objectivity of the jury to prevent its fair and just consideration, after receipt of appropriate curative instructions from the court. Since the jury had been impaneled and sworn prior to the granting of the mistrial motion, defendant had been placed in jeopardy for purposes of activating the protections afforded by the double jeopardy clause (see CPL 40.30; *United States v Martin Linen Supply Co.,* 430 US 564). Accordingly, the petition should be granted and the indictment dismissed. Petition granted, without costs, and indictment dismissed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.