■ In the Matter of CYNTHIA ZEIGLER, Petitioner, v ROBERT M. MORGENTHAU, as District Attorney of New York County, et al., Respondents. — Application for a writ of prohibition dismissed, without costs and without disbursements. Concur — Kupferman, J. P., Sandler, Carro and Milonas, JJ..

Alexander, J., dissents in a memorandum as follows: On January 28, 1983, the petitioner Cynthia Zeigler was indicted by a Grand Jury of New York County and charged with two counts of robbery in the second degree (Penal Law, § 160.10, subds 1, 2, par [a]), arising out of an incident that had occurred on January 20, 1983, when the petitioner and another, allegedly forcibly stole a handbag from one Consuella Alvardo, and in the process, caused her physical injury. ¶ Following various pretrial proceedings, jury selection commenced on October 3, 1983. Before the first panel of jurors was brought into the courtroom, it was discovered that an uncle of the petitioner was a member of the panel. Defense counsel observed the petitioner in conversation with this gentleman in the corridor and upon determining the relationship between the petitioner and the prospective juror, defense counsel informed the District Attorney and the Judge of the situation. That prospective juror was excused and the *voir dire* of the remaining members of the panel commenced. The District Attorney made no request at that time for a new panel nor does it appear than any inquiry was made of the panel about the above events. Five jurors were selected from this first panel. Seven additional jurors and two alternates were selected from a second panel and jury selection was completed the next day, October 4. Prior to the opening statements by counsel, juror number 2, a Mrs. Lane, informed the court clerk that the petitioner had spoken to her that morning in the corridor. This information was brought to the attention of the District Attorney, defense counsel and the presiding Judge and the court proceeded to examine Mrs. Lane on the record in the presence of both counsel. Mrs. Lane, who had been a member of the first panel of prospective jurors, which had included the petitioner's uncle, informed the court that the petitioner had approached her that morning and told her that she was going downstairs to get something to eat and asked that she convey that information to the defense counsel. Mrs. Lane stated that she did not engage in any conversation with the petitioner, but rather reported the encounter to the clerk of the court promptly. She also recounted that prior to the start of the trial and while the first panel was in the corridor outside of the courtroom, waiting to come into the courtroom, the petitioner approached Mrs. Lane and asked if she was a juror. Mrs. Lane replied "No, we are all waiting", the petitioner said to her "Well I am not a juror". Mrs. Lane says that she walked away saying "I have a phone call to make * * * I don't really like to get involved." Although Mrs. Lane had said initially, that Zeigler "spoke to the jurors" out in the hall, the conversation between Zeigler and herself was the only one she could recount. She stated that she didn't know how many of the jurors Zeigler had approached. In response to the court's inquiry as to whether she could "judge the case on what you hear from the testimony elicited, and not with respect to any plus or minus the defendant? Do you feel you could be objective?", Mrs. Lane responded: "Yes I do". Neither the District Attorney nor the defense counsel nor the court put any other questions to Mrs. Lane and she resumed her position in the jury box. ¶ Without making any inquiry of the other jurors, and without eliciting any proof or making any factual determination that the jury had in any way been affected or tainted by the defendant's conduct, the trial court declared a mistrial over the strenuous objections of the defendant's counsel. ¶ Our Court of Appeals has repeatedly held that "[w]here a court declares a mistrial without obtaining the defendant's consent the double jeopardy provisions of both our State Constitution and the Federal Constitution prohibit retrial for the same crime unless 'there is a manifest necessity for [the mistrial], or the ends of public justice would otherwise be defeated'." (*People v Michael,* 48 NY2d 1, 9; *Matter of Nolan v Court of Gen. Sessions,* 11 NY2d 114, 119). Indeed these principles have to some extent been codified in CPL 280.10 (subd 3) which allows a court to declare a mistrial on its own

motion only "when it is physically impossible to proceed with the trial in conformity with law". ¶ The Trial Judge is in the best position to determine whether a mistrial is in fact necessary in a particular case and thus is entrusted with discretion in this area. Deference is to be accorded the Trial Judge's decision to declare a mistrial. However it is indispensibly necessary that it appear that prior to declaring such a mistrial, "the Trial Judge has properly explored the appropriate alternatives, and there is a sufficient basis in the record for a mistrial". (*Hall v Potoker,* 49 NY2d 501, 505.) Where the trial court has made such an exploration and sufficient appears in the record to demonstrate the necessity, an appellate court will be hesitant to interfere with the exercise of this discretion (see *Matter of Napoli v Supreme Ct.,* 33 NY2d 980, affg on opn below 40 AD2d 159). The appellate court should not hesitate to act where such necessity is not reflected in the record, however, because "the constitutional prohibition against double jeopardy is fundamental not only to the process of criminal justice, but to our system of government itself." (*People v Michael,* 48 NY2d 1, 7.) ¶ Unfortunately, no appropriate alternatives to the declaration of a mistrial were explored. The Trial Judge rejected out of hand defense counsel's suggestion that inquiry be made of any of the jurors, other than Mrs. Lane, to determine whether they were aware of the conduct of the defendant and if so, whether it had in any way prejudiced them or impacted upon their ability to fairly try the issues presented. No inquiry was had of the jurors who were selected from the first panel along with Mrs. Lane as to whether the defendant had spoken to any of them, whether any of them knew that one of the members of their panel was the defendant's uncle, or whether anything had happened during the course of their waiting in the hallway that would in any way impair their ability to fairly and objectively try the issues presented. Moreover, apparently neither the District Attorney nor defense counsel, despite full knowledge of the fact that the defendant's uncle had been among the panel initially brought into the court, made any inquiry in respect to that fact on the *voir dire* examination of those jurors. ¶ While there is no gainsaying the fact that the defendant's conduct was manifestly improper and while it clearly appears that the learned Trial Judge sincerely felt that a mistrial was the appropriate manner in which to deal with the problem with which he was confronted, this record neither supports the existence of a "manifest necessity" for the mistrial, nor demonstrates that it was "physically impossible to proceed with the trial in conformity with law." No matter the worthy intent of the Trial Judge, " 'reprosecution after a mistrial has unnecessarily been declared by the trial court obviously subjects the defendant to the same personal strain and insecurity regardless of the motivation underlying the trial judge's action [which the double jeopardy provision was intended to prevent].' (*United States v. Jorn,* [400 US 470], p. 483)" (*Matter of Napoli v Supreme Ct.,* 40 AD2d 159, 164, dissenting opn, Murphy, J.). ¶ I conclude, therefore, the petition seeking a writ of prohibition against further prosecution of this petitioner Cynthia Zeigler should be granted.