[640 NYS2d 882]

In the Matter of Ceasar Robles, Petitioner, v Phylis Skloot Bamberger et al., Respondents.

First Department, April 9, 1996

## APPEARANCES OF COUNSEL

*Robert M. Baum* for petitioner.

*Michael O. Hueston* of counsel *(Dennis C. Vacco, Attorney-General,* attorney), for Phylis Skloot Bamberger, respondent.

*Karin R. Vandevenne* of counsel *(Robert T. Johnson, District Attorney* of Bronx County, attorney), respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

The petitioner and a codefendant, Angel Gonzalez, were charged under Bronx County indictment No. 7090/94 with robbery in the first degree, robbery in the second degree and lesser crimes. The robbery was allegedly committed on the Metro North platform at the Fordham Road Station in the Bronx. A jury trial commenced on August 28, 1995, and the People presented three witnesses on September 1 and September 5, 1995. Defendants presented no evidence. On September 6, 1995, the parties delivered their summations, the jury was charged, and at 3:30 P.M., they retired to deliberate. They were sequestered later that evening.

The next day, Thursday, September 7, 1995, during the court's reinstruction on the charges of robbery in the second and third degrees, Juror No. 4 burst into tears and left the courtroom. During an in camera interview, she told the court that her problem was "[t]he arguing, the fighting. Everyone has a different view". After speaking with the court, however, Juror No. 4 stated that she would be able to continue serving, and the jury resumed its deliberations.

The next day, Friday, September 8, 1995, Juror No. 6 sent out a note signed by the foreperson, stating: "I would like to see you about my Army Reserve this weekend, because I will be reported absent and I would lose my drill pay". While awaiting the production of the defendants in order to respond to the note, the court received another note from Juror No. 4, and signed by the foreperson, stating: "There is no way I am going to change my mind, and I see no sense in staying in a hotel any longer or deliberating any longer. One decision has already been made and agreed by all of us". The note indicated at the top: "I am writing on behalf of the foreman as well."

The court invited comments from all the attorneys. Both the possibility of an *Allen* charge and the taking of a partial verdict were discussed. The court agreed to give an *Allen* charge, declined defense counsel's suggestion to speak to Juror No. 4,

but agreed to bring Juror No. 6 to the courtroom to address his concerns.

Although the court confirmed with Juror No. 6 that a reservist could reschedule this commitment, the juror declined this alternative because it would require his taking additional unpaid leave from his job. The following colloquy between the court and Juror No. 6 ensued:

"COURT: Well then, let me ask you this: Would this feeling that you have, would it affect your ability to continue deliberating if it went beyond—

"JUROR #6: It already has.

"COURT: It already has affected you?

"JUROR #6: Yes.

"COURT: Has it affected your ability to discuss the evidence?

"JUROR #6: Yes.

"COURT: It has?

"JUROR #6: Yes.

"COURT: Okay. And will it continue to affect your ability by working through today into tonight?

"JUROR #6: Yes, it would ma'am.

"COURT: So you don't think you'll be able to—are you saying that you don't think you'd be able to work as a full, fair juror in the next hours here?

"JUROR #6: Yes. I would not be able to.

"COURT: I see. Okay, sir. Thanks very much. You can go back upstairs."

After conferring with the court, the defense attorneys agreed that Juror No. 6 could no longer deliberate. They suggested an inquiry as to whether the jury had reached a verdict on any of the counts. After a short recess, the court announced that it would discharge Juror No. 6, and that it would not take a partial verdict, but instead would declare a mistrial. Upon defense counsel's urging, the court agreed to question Juror No. 6 again to determine when his problems with deliberation arose, but declined to make inquiry of the entire jury because they had not officially declared that they had reached a partial verdict (see, CPL 310.70).

The court then reinterviewed Juror No. 6. The following exchange took place:

"COURT: Was the difficulty that you have encountered before or after any decision on any of the counts?

"JUROR #6: I think it was after.

"COURT: It was after. You became troubled or had difficulty after the jury made a decision on one of the counts?

"JUROR #6: No, not really. I didn't have trouble deciding. I already had my mind made up.

"COURT: As to that one count?

"JUROR #6: Yes.

Counsel for the defendants asserted that the juror's responses required clarification, but the court disagreed, discharged Juror No. 6, and declared a mistrial.

The issue in this proceeding is whether the respondents now have the authority to reprosecute the petitioner. Double jeopardy principles will allow reprosecution only where the *sua sponte* declaration of a mistrial in the first proceeding, over the defendant's objection, was justified by a finding that "it [was] physically impossible to proceed with the trial in conformity with law" (CPL 280.10 [3]). This statutory section is premised upon Federal and State constitutional proscription against trying a criminal defendant twice, over his objection, except where it can be shown that there was a "manifest necessity for the [original mistrial], or the ends of public justice would otherwise be defeated" (*United States v Perez*, 9 Wheat [22 US] 579, 580; *Matter of Nolan v Court of Gen. Sessions*, 11 NY2d 114, 119; *People v Michael*, 48 NY2d 1, 9).

Given that the Trial Judge is uniquely situated to evaluate whether a mistrial is appropriate, deference is accorded to its discretionary determination (*People v Michael*, *supra*, at 9; *see*, *Matter of Napoli v Supreme Ct.*, 40 AD2d 159, *affd* 33 NY2d 980; *Arizona v Washington*, 434 US 497). However, it is also "indispensibly necessary that it appear that prior to declaring such a mistrial, 'the Trial Judge has properly explored the appropriate alternatives, and that there is a sufficient basis in the record for a mistrial' " (*Matter of Zeigler v Morgenthau*, 99 AD2d 989, 991 [Alexander, J., dissenting] [quoting *Hall v Potoker*, 49 NY2d 501, 505], *revd on dissent of Alexander, J.*, 64 NY2d 932).

Manifest necessity for a mistrial has been found where the court concludes, after conducting a "probing and tactful inquiry" (*People v Buford*, 69 NY2d 290, 299), that a juror is grossly unqualified to continue serving, there are no alternates available, and the defense does not consent to proceeding with less than 12 jurors (CPL 270.35; *People v Tinsley*, 58 NY2d 990; *People v Garcia*, 215 AD2d 246, *lv denied* 86 NY2d 794).

The record in this case supports the trial court's finding, after conducting two thorough and searching interviews with

Juror No. 6, that his dismissal was necessary because Army Reserve and work scheduling problems had impaired his ability to deliberate, and that he " 'possesse[d] a state of mind which would prevent the rendering of an impartial verdict' " (*People v Buford, supra*, at 298, quoting *People v West*, 92 AD2d 620, 622 [Mahoney, P. J., dissenting]).

The decision to discharge this juror was not based on the improper grounds of financial or personal inconvenience (*compare, People v Michael*, 48 NY2d 1, *supra; People v Nocedo*, 161 AD2d 297; *Matter of Colcloughley v Johnson*, 115 AD2d 58, *lv denied* 68 NY2d 604), but instead upon this juror's unequivocal articulation that his problems had affected his deliberation, and his statement that he "would not be able to" deliberate fairly on the case, even if only for a few hours (*see, People v Tinsley, supra* [discharge warranted where juror disappeared overnight, said jury was too unknowledgeable to reach a verdict and that he could not be fair to person judged]; *People v Bolden*, 197 AD2d 528, *lv denied* 82 NY2d 922 [discharge warranted where juror's unequivocal responses indicated job-related concerns would prevent giving the case attention and impair ability to decide case fairly and impartially]).

However, it was an abuse of discretion to have declared a mistrial on all of the counts in the indictment without inquiring whether a decision had been reached on any of the charges (*see, People v Michael*, 48 NY2d 1, *supra*). The overwhelming evidence indicated that this jury had reached agreement on at least one of the counts. Juror No. 4's note, joined by the foreperson, stated that "[o]ne decision has already been made and agreed by all of us". In addition, the second exchange between the court and Juror No. 6 indicated that a partial verdict had been reached.

Since defense counsel repeatedly requested that the jury be asked whether they had reached a partial verdict, and the jury gave strong indications that they had reached a decision on at least one of the counts, the duty to explore all reasonable alternatives (*see, Matter of Enright v Siedlecki*, 59 NY2d 195; *Hall v Potoker*, 49 NY2d 501, *supra; People v Michael*, 48 NY2d 1, *supra; Matter of Zeigler v Morgenthau*, 99 AD2d 989, *supra*) required this Court to inquire as to whether a verdict had been reached on any of the counts (*see, Matter of Oliver v Justices of N. Y. State Supreme Ct.*, 36 NY2d 53; *see also, People v Hymes*, 208 AD2d 355, *lv denied* 85 NY2d 863) before declaring a mistrial over the petitioner's objection.

A verdict sheet, left behind after the jurors had been discharged, indicated that a partial verdict, including an

acquittal, had in fact been reached. Neither physical impossibility to proceed nor manifest necessity to declare a mistrial as to the entire indictment has been demonstrated. The partial verdict should have been recorded and a mistrial declared as to the remaining counts. The petition must be granted in its entirety, the respondents prohibited from further prosecuting the petitioner under this indictment, and the indictment dismissed.

Accordingly, the application for a writ of prohibition should be granted, without costs and without disbursements, the respondents should be prohibited from retrying petitioner Ceasar Robles on Bronx County indictment No. 7090/94 and the indictment should be dismissed.

SULLIVAN, J. P., ROSENBERGER, ELLERIN, RUBIN and NARDELLI, JJ., concur.

Application for a writ of prohibition granted, without costs and disbursements, respondents prohibited from retrying petitioner on Bronx County indictment No. 7090/94, and the indictment dismissed.