OPINION OF THE COURT
Michael A. Gross, J.
Defendant was charged with several counts of attempted murder in the second degree, rape in the third degree and other related charges. At his jury trial, the People introduced evidence establishing that on June 9, 1997, defendant attempted to murder his former girlfriend, Cindia Maldonado, by slashing her numerous times and that on June 17, 1997, he attempted to kill Maldonado’s mother, Miriam Fernandez, and stepfather, Aníbal Cruz, by firing a loaded gun at their vehicle. The People also alleged that defendant had had sexual intercourse with 16-year-old Maldonado on several occasions.
Deliberations
Following the conclusion of the evidence, the court submitted to the jury three counts of attempted murder in the second degree, as well as several lesser included offenses, and one count of rape in the third degree.[1] The court instructed the jurors to consider any lesser included counts only if they found *500 defendant not guilty of the higher counts. After three days of deliberations during which the jury requested and received numerous readbacks of testimony and reinstructions on the applicable law, the jury returned a note indicating it had reached a verdict as to counts 1 and 4, relating to Cindia Maldonado. However, the jury also indicated that it was deadlocked as to all charges in counts 2 and 3, relating to the shooting incident of June 17, 1997.
After conferring with the parties, the court accepted a partial verdict.[2] The jury found defendant guilty of count 1A, attempted murder in the second degree as to Cindia Maldonado, and count 4, rape in the third degree. The court directed the jury to continue deliberations on counts 2 and 3. Later that day, the jury requested the definition of the crimes of reckless endangerment in the first and second degrees, as charged in counts 3D and 3E.
On the fourth day of deliberations, the jury returned a second deadlock note. Before the court could respond to the note, the jury sent subsequent notes, requesting a readback of certain trial testimony. Following the completion of readbacks, the court instructed the jury that it could return a verdict on any of the remaining charges set forth in counts 2 and 3 even if it were unable to reach unanimity on all remaining charges. The jury resumed its deliberations.
On the fifth day of deliberations, the jury sent its final note to the court, indicating it was unable to render a verdict with respect to any of the charges set forth in counts 2 and 3. There was no indication in either the final note, or any of the previous notes that the jury had ever reached a partial verdict as to any of the charges under counts 2 and 3.
Upon receipt of the third deadlock note, the court declared a mistrial and discharged the jury. Prior to discharging the jury, *501 defense counsel requested that the court inquire whether the jury had reached a partial verdict as to any of the charges under counts 2 and 3. The People opposed defendant’s request. Absent any indication that a partial verdict had been reached, the court denied defendant’s motion.
The Verdict Sheet
Sometime after the jury’s discharge from service, the court received the verdict sheet, which had been inadvertently left behind in the jury room. On the verdict sheet, in addition to the check marks under the “guilty” column as to counts 1A and 4, there were also check marks under the “not guilty” column as to counts 3A, 3B and 3C, charging defendant with attempted murder in the second degree, attempted assault in the first degree and attempted assault in the second degree as to Aníbal Cruz. The parties were informed immediately of the verdict sheet notations and defendant subsequently filed this motion.
Defendant’s Application
In his motion, brought by order to show cause, defendant contended that it was error for the court to declare a mistrial without first having inquired whether the jury had reached a partial verdict as to any of the unresolved charges. He contended that the verdict sheet indicated that the jury intended to acquit defendant of counts 3A, 3B and 3C. He asserted that the jury’s request for instructions on the law pertaining to counts 3D and 3E demonstrated that the jury had actually intended to acquit defendant of counts 3A, 3B and 3C since the jury had been properly instructed to consider lesser included offenses only if it had unanimously acquitted of the higher counts as set forth on the verdict sheet. Accordingly, defendant moved for an order directing the clerk of the court to “enter and duly record the verdict of not guilty,” as to counts 3A, 3B and 3C. In the alternative, defendant requested that the jurors be reconvened as soon as possible and polled as to whether they had reached a verdict of “not guilty” as to those counts. The court orally denied defendant’s motion. This decision sets forth in greater detail the reasons for the court’s finding that defendant is not entitled to the relief sought.[3]
*502 Analysis
Contrary to defendant’s contentions, the court did not err in denying defendant’s request to solicit a partial verdict before discharging the jury. The jury never gave any indication that it had rendered a partial verdict as to any of the remaining counts in any of its notes. Accordingly, the court is “not obligated to inquire of the jury whether it reached a partial verdict in the absence of an indication that the jury wishes to return such a verdict.” (See, People v Hymes, 208 AD2d 355, 356 [1st Dept 1994].)
Matter of Robles v Bamberger (219 AD2d 243 [1st Dept 1996]), relied upon by defendant in support of his position, is clearly distinguishable from this case. In Robles, the Appellate Division held that the trial court abused its discretion in declaring a mistrial without first inquiring whether the jury had a partial verdict and, accordingly, prohibited a retrial where, as here, the verdict sheet left behind by the jury indicated that a partial verdict had been reached. However, in Robles, the jury had sent a note actually stating that it had reached an agreement as to one count, a fact confirmed during an unrelated inquiry with one juror. Thus, in Robles, the trial court was required to inquire whether a partial verdict had been reached, in view of the strong indications of this precise result from the jury. (219 AD2d, at 247.) Here, the court had no such obligation since there was no indication of agreement by the jury. (See, People v Hymes, 208 AD2d, supra, at 356.)
Moreover, the court had, in fact, communicated to the jury on two separate occasions that it was permissible to render a partial verdict on any of the counts charged. When the court received the initial deadlock note from the jury, it accepted a partial verdict as to the charges in counts 1 and 4 and then directed the jury to resume deliberations on counts 2 and 3; manifestly the jury understood that it had the power to render a verdict on some charges even if it could not agree to a verdict on all. After the second deadlock note, the court again informed the jury that it was permissible to render a partial verdict by noting that a verdict on any of the remaining charges would be helpful to the parties. Thus, in view of the court’s repeated instructions, as well as the course of the protracted delibera- *503 tians, the jury was clearly aware that it could render a partial verdict as to any of the charges under counts 2 and 3. However, the jury never gave any indication to the court that it had reached such an agreement after the partial verdict on counts 1 and 4. In fact, the jury’s silence, after the partial verdict was recorded, during two further days of deliberations is powerful evidence that it had not reached a unanimous decision as to any of the remaining charges. Accordingly, an inquiry as to whether a partial verdict had been reached was not required.
Moreover, contrary to defendant’s contentions, the notations on the verdict sheet do not constitute a “verdict” by the jury. In Matter of Oliver v Justices of N. Y. Supreme Ct. (36 NY2d 53 [1974]), the trial court submitted a count of murder in the second degree, and the lesser included offense of manslaughter in the first degree to the jury. During deliberations, the jury submitted a note indicating a partial verdict as to one count, and a deadlock as to the other count. Without any requests by either party for a partial verdict, a mistrial was declared. Defendant subsequently submitted affidavits from 9 of the 12 jurors, indicating that the partial verdict was a unanimous acquittal of the murder charge. Based on these affidavits, defendant moved to dismiss the murder count, claiming he was acquitted of that charge. The Court of Appeals held that “whatever the actual substance of the jury’s partial verdict, the decision upon the defendant’s guilt or innocence was not announced in court by the foreman and consequently was not recorded on the minutes. Thus, on the present facts there was no ‘verdict’.” (Matter of Oliver v Justices of N. Y. Supreme Ct., 36 NY2d, at 57.)
Similarly, in this case, since the foreperson of the jury never rendered a verdict on the record prior to discharge, there was no “verdict” on any of the charges in counts 2 and 3, regardless of what the verdict sheet indicates.[4] (See, Matter of Oliver v Justices of N. Y. Supreme Ct., 36 NY2d, supra, at 57.) *504 Accordingly, defendant’s request that a verdict of “not guilty” be entered by the clerk is denied.
The court also rejects defendant’s claim that the jury’s request for reinstructions on the elements of reckless endangerment in the first and second degrees supports the conclusion that the jury had acquitted defendant of the crimes of attempted murder in the second degree, and attempted assault in the first and second degrees. The claim, apparently, is based on the court’s instruction that the jury not consider any lesser offense unless it had unanimously acquitted defendant of the greater offense. (See, People v Boettcher, 69 NY2d 174 [1987].) Since the jury sought further instructions on the lesser grade offenses of reckless endangerment in the first and second degrees, defendant reasons that the jury must necessarily have acquitted of all the higher grade offenses.
Initially, it should be noted that defendant cites no authority — and research by the court has disclosed neither appellate nor trial court decisions — which support this claim. Further, defendant’s argument does not support the result he seeks. Reckless endangerment in the first degree is not a lesser included offense of attempted murder in the second degree since it is possible to commit the latter without necessarily committing the former. (See, CPL 300.50; People v Glover, 57 NY2d 61 [1982].) For the same reason, reckless endangerment in the first degree is not a lesser included offense of either attempted assault in the first degree or attempted assault in the second degree. Pursuant to the court’s instructions, the jury was free to consider the charges in count 3 in any sequence it wished, subject only to the requirement that it could not consider the lesser included offense of attempted assault in the second degree (30- unless it had unanimously acquitted defendant of attempted assault in the first degree (3B) and it could not consider the lesser included offense of reckless endangerment in the second degree (3E) unless it had unanimously acquitted defendant of reckless endangerment in the first degree (3D). Accordingly, contrary to defendant’s argument, the jury’s request for reinstruction on reckless endangerment in the first degree suggests nothing about the status of its *505 deliberations on attempted murder in the second degree or attempted assault in the first degree or attempted assault in the second degree.
Defendant’s claim, if accepted by this court, would apply only to the two reckless endangerment charges: that the rein-struction on reckless endangerment in the second degree suggested a unanimous acquittal of the greater charge of reckless endangerment in the first degree. Unsurprisingly, defendant never argued this position, perhaps because it is contradicted by the verdict sheet notations. Finally, this claim, if made by defendant, would be rejected since the jury may have sought reinstruction on the lesser included offense not because it had deliberated and unanimously acquitted of the greater offense but rather to enable it to consider the differences in elements of the two crimes. That is, the request for reinstructions may reflect nothing about the jury’s consideration of particular charges; instead the jury may have been seeking the legal framework for assessing criminal charges and theories of prosecution within which the evidence had to be assessed. At no point during five days of deliberations during which numerous notes were sent to the court and the jury was returned to the courtroom for repeated readbacks and legal instructions did the jury ever inform the court that it had reached a verdict on the charges at issue. On the instant record, there is simply no basis for the court to infer an acquittal from a requested rein-struction which is, at most, ambiguous, on the jury’s deliberative process.
In the alternative, defendant requests that the court summon the discharged jurors and poll the reconvened jury regarding whether it had reached a verdict as to counts 3A, 3B and 3C. However, the court is without authority to grant defendant’s request. Under CPL 310.60 (1), a deliberating jury may be discharged by the court without rendering a verdict when the jury has deliberated for an extensive period of time without agreeing upon a verdict as to any charges submitted and the court is satisfied that such agreement is unlikely within a reasonable time. In this case, the jury was properly discharged in accordance with CPL 310.60 (1), following the declaration of a mistrial after five days of deliberations. The discharge of the jury, accordingly, terminated the trial. (See, Matter of Morgenthau v Beal, 236 AD2d 194 [1st Dept 1997].) Therefore, the court lacks the power to reopen the trial and accept the jury’s verdict after it had discharged the jury. (Matter *506 of Morgenthau v Beal, 236 AD2d, at 199.) Once the trial has been terminated, “the Judge’s power to correct the record only extends to ministerial acts, and does not extend to substantive reassessments of the jury’s verdict.” (Matter of Morgenthau v Beal, 236 AD2d, at 199; see also, People v Satloff, 56 NY2d 745 [1982]; People v Figueroa, 96 AD2d 515 [2d Dept 1983] [after jury discharge, no longer possible to remedy defects by resubmitting counts for jury’s reconsideration].) Since the court lacks authority to reconvene the jury once discharged, defendant’s motion is denied.
Accordingly, defendant’s motion is denied in all respects.

. The court submitted for the jury’s consideration 12 separate crimes grouped among four counts on the verdict sheet. The crimes included both indictment charges and lesser included offenses. Count 1 pertained to the June 9, 1997 incident involving Cindia Maldonado. Defendant was charged with attempted murder in the second degree under count 1A, assault in the first degree under count IB, and the lesser included offense of assault in the second degree under count 1C. Count 2 pertained to the June 17, 1997 incident with respect to Miriam Fernandez. Defendant was charged with attempted murder in the second degree under count 2A, attempted assault in the first degree under count 2B, and the lesser included offense of attempted assault in the second degree under count 2C. Count 3 also involved the June 17, 1997 incident with respect to Aníbal Cruz. Defendant was charged with attempted murder in the second degree under count 3A, attempted assault in *500 the first degree under count 3B, .the lesser included offense of attempted assault in the second degree under count 3C, reckless endangerment in the first degree under count 3D, and the lesser included offense of reckless endangerment in the second degree under count 3E. Count 4 charged defendant with one count of rape in the third degree, pertaining to Cindia Maldonado. As to counts 1, 2 and 3, the court instructed the jury that should it reach a verdict of guilt as to any charge within a particular count, it must stop deliberating as to other charges under that count, and proceed instead to the next count.

. (See, GPL 310.70.) The court believed, and the parties concurred, that a reasonable possibility existed that the jury would be able to reach a verdict on all counts. Accordingly, pursuant to GPL 310.70 (1) (b) (i), the court was authorized to accept the partial verdict and direct the jury to resume deliberations upon the unresolved counts.

. On August 19, 1999, the court granted the People’s motion to dismiss all charges related to the incident of June 17, 1997, based on the view that *502 the interest of justice would not be advanced by a retrial in light of the sentence of a 25-year determinate term of imprisonment imposed on the conviction of attempted murder in the second degree and, further, the problems of proof which caused a deadlock at the first trial which were not likely to be overcome during a second trial.

. CPL article 310 sets forth with specificity the procedures a trial court must adhere to when accepting a verdict. Under CPL 310.40, a verdict must be rendered and announced by the foreperson of the jury in the courtroom in the presence of the court, a prosecutor, the defendant’s counsel and the defendant. Before rendering and announcing the verdict, the foreperson must be asked whether the jury has agreed upon a verdict and must answer in the affirmative. (See, CPL 310.40.) Furthermore, under CPL 310.80, the verdict must be recorded on the minutes and read to the jury. The jurors must then be collectively asked whether such is their verdict. (See, CPL 310.80.) Even if no juror makes any declaration in the negative, the jury must, if either party makes such an application, be polled and each juror separately asked whether *504 the verdict announced by the foreperson is in all respects his or her verdict. If upon either the collective or the separate inquiry any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberation. If no disagreement is expressed, the jury must be discharged from the case. (See, CPL 310.80.) Thus, defendant is not entitled to the recording of a not guilty verdict on these charges since none of the procedures for rendering a verdict were satisfied.