Matter of Shipmon v Moran (2024 NY Slip Op 01424)

Matter of Shipmon v Moran

2024 NY Slip Op 01424

Decided on March 15, 2024

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 15, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., BANNISTER, MONTOUR, OGDEN, AND DELCONTE, JJ.

146 OP 23-01825

[*1]IN THE MATTER OF WILLIE SHIPMON, PETITIONER,
v
HON. THOMAS E. MORAN, SUPREME COURT JUSTICE, AND MONROE COUNTY DISTRICT ATTORNEY'S OFFICE, RESPONDENTS. 

LINDSEY M. PIEPER, ROCHESTER, FOR PETITIONER. 
JOHN P. BRINGEWATT, COUNTY ATTORNEY, ROCHESTER (ROBERT J. SHOEMAKER OF COUNSEL), FOR RESPONDENT MONROE COUNTY DISTRICT ATTORNEY'S OFFICE. 

 Proceeding pursuant to CPLR article 78 (initiated in the Appellate Division of the Supreme Court in the Fourth Judicial Department pursuant to CPLR 506 [b] [1]) to prohibit respondents from retrying petitioner on Indictment No. 71434-22. 
It is hereby ORDERED that said petition is unanimously granted without costs and judgment is granted in favor of petitioner as follows:
"It is ADJUDGED that respondents are prohibited from retrying petitioner on Indictment No. 71434-22."
Memorandum: Petitioner commenced this original CPLR article 78 proceeding in this Court seeking a writ of prohibition barring his retrial on the ground of double jeopardy. We agree with petitioner that the petition should be granted.
Petitioner was charged, together with a codefendant, with two counts of criminal possession of a weapon and one count of murder in the second degree. A joint jury trial commenced before Supreme Court (Moran, J.) in September 2023. In the middle of the second day of jury deliberations, after the alternate jurors had been dismissed, the court received a note from the jury foreperson asking: "If we have a decision on five counts but not on one of them, what would our course of action be?" The court informed the jurors that it was too early to "contemplate a partial verdict" and instructed them to continue deliberating. After the exchange of additional notes, the foreperson informed the court that one juror had refused to continue deliberating further and wanted to "get back" to the case after the weekend.
The court released the jury and, over the weekend, received two messages directly from jury members. The first message alleged that a juror—later identified as juror number five—had conducted independent research into the definition of second-degree murder and had engaged in discussions about the case outside the presence of the full jury. In the second message, juror number five requested to speak to the Judge.
When court reconvened, the court and the parties questioned juror number five, who denied conducting independent research or discussing the case outside the presence of the full jury. However, he did allege that there had been "tension in the jury room" caused by, inter alia, jurors making comments having racial connotations. He further stated that, although he felt pressured by the other jurors, he believed that a resolution was still possible. The court then undertook a separate inquiry with each juror, asking them whether they were aware of any juror researching the definition of murder in the second degree, discussing the case outside the presence of the full jury, or making racial comments. Three of the jurors said that juror number [*2]five had told them that he looked up the definition of murder in the second degree and that juror number five had tried to engage in deliberations outside the presence of the full jury. Several jurors also stated that there had been some racial tension during deliberations and identified juror number five as the "only [B]lack man" in the deliberation room. Notably, none of the jurors stated that juror number five had shared his findings regarding the definition of murder in the second degree with them, and the jurors' descriptions of "discussions" outside the presence of the full panel suggested that such incidents were brief and not substantive. The court did not permit any questioning from petitioner's counsel as to whether a partial verdict had been reached and, if so, whether the racial tensions began before or after that point.
At the close of the inquiry, the Judge expressed frustration that his admonishments to the jury had been violated and asked the parties whether they were moving for a mistrial. Petitioner's codefendant promptly made such a motion, but petitioner did not and requested instead that deliberations continue with 11 jurors. Noting that such a request required approval of the trial judge, the court declared a mistrial. Petitioner then requested that the jury be polled to determine whether they had reached a partial verdict. The court denied that request and scheduled a retrial.
Initially, respondent Monroe County District Attorney's Office correctly acknowledges that double jeopardy is a ground for obtaining the remedy of a writ of prohibition. "[W]hen a defendant is about to be prosecuted in violation of [their] constitutional right against double jeopardy, . . . the harm that [they] would suffer—prosecution for a crime for which [they] cannot constitutionally be tried—is so great and the ordinary appellate process so inadequate to redress that harm, that prohibition will lie to raise the claim" (Matter of Rush v Mordue, 68 NY2d 348, 354 [1986]; see People v Michael, 48 NY2d 1, 7 [1979]). Further, there is no dispute that jeopardy had attached at the time the court declared a mistrial (see CPL 40.20 [1]; 40.30 [1] [b]; People v Ferguson, 67 NY2d 383, 387-388 [1986]).
"[T]he Double Jeopardy Clause protects criminal defendants from multiple prosecutions for the same offense" (Matter of Gorghan v DeAngelis, 7 NY3d 470, 473 [2006]). "[W]hen a mistrial is granted over the defendant's objection or without the defendant's consent, double jeopardy will, as a general rule, bar retrial" (Matter of Davis v Brown, 87 NY2d 626, 630 [1996]). "However, the right to have one's case decided by the first empaneled jury is not absolute, and a mistrial granted as the product of manifest necessity will not bar a retrial" (id.; see Hall v Potoker, 49 NY2d 501, 505 [1980]; Michael, 48 NY2d at 9; see also CPL 280.10 [3]). A court "must exercise sound discretion to assure that, taking all relevant circumstances into account, there was manifest necessity for the declaration of a mistrial without defendant's consent" (Matter of Enright v Siedlecki, 59 NY2d 195, 200 [1983]; see Michael, 48 NY2d at 9).
Although deference is accorded to a trial court's decision to declare a mistrial, the court's discretion is not without limits (see Enright, 59 NY2d at 200). The People bear the "heavy" burden of establishing that the mistrial was manifestly necessary (Arizona v Washington, 434 US 497, 505 [1978]; see Matter of Capellan v Stone, 49 AD3d 121, 126 [1st Dept 2008], lv denied 10 NY3d 716 [2008]). "[E]ven if the reasons for granting a mistrial are deemed actual and substantial, the trial court must explore appropriate alternatives and provide a sufficient basis in the record for resorting to this 'drastic measure' " (People v Smith, 176 AD3d 1114, 1116 [2d Dept 2019], lv denied 34 NY3d 1163 [2020]; see Hall, 49 NY2d at 505; see also Matter of McNair v McNamara, 206 AD3d 1689, 1691 [4th Dept 2022]).
Here, the People have not met their burden of demonstrating that the declaration of a mistrial was manifestly necessary. Assuming, arguendo, that juror number five was grossly unqualified to continue serving, we conclude that the court abused its discretion in declaring a mistrial without considering other alternatives. Petitioner expressed his desire to waive trial by a jury of 12 individuals and proceed with the remaining 11 jurors, an option that has been endorsed by the Court of Appeals "if circumstances arise that warrant such a request" (People v Gajadhar, 9 NY3d 438, 447 [2007]). Although the court has discretion to deny a request to proceed with 11 jurors—as the court did here—that discretion is limited (see id.). The record here is devoid of evidence that petitioner's request was not tendered in good faith, that the request was " 'a stratagem to procure an otherwise impermissible procedural advantage' " (id.), or that deliberation with 11 jurors could not "produce a fair verdict" (Arizona, 434 US at 509). Under the circumstances presented, as urged by defense counsel, "it would have been appropriate to poll [*3]the remainder of the jurors to ascertain whether they could render an impartial verdict" (Smith, 176 AD3d at 1116; see Matter of Morris v Livote, 105 AD3d 43, 48 [1st Dept 2013]; see also Matter of Rubenfeld v Appelman, 230 AD2d 911, 912 [2d Dept 1996]).
Moreover, "it was an abuse of discretion to have declared a mistrial on all of the counts in the indictment without inquiring whether a decision had been reached on any of the charges" (Matter of Robles v Bamberger, 219 AD2d 243, 247 [1st Dept 1996], lv denied 88 NY2d 809 [1996], appeal dismissed 88 NY2d 962 [1996]). Although there was not "overwhelming evidence" that a partial verdict had been reached (id.), the jury's note asking for guidance on next steps "[i]f we have a decision on five counts but not on one of them" presented more than a mere inference that the jury may have reached a partial verdict, and the subsequent communications with the jury did not indicate otherwise (cf. Matter of Rivera v Firetog, 11 NY3d 501, 508 [2008]). Under these circumstances, the court was required to make an inquiry "as to whether a verdict had been reached on any of the counts . . . before declaring a mistrial over the petitioner's objection" (Robles, 219 AD2d at 247; see generally Matter of Oliver v Justices of N.Y. Supreme Ct. of N.Y. County, 36 NY2d 53, 58 [1974]).
On this record, "[n]either physical impossibility to proceed nor manifest necessity to declare a mistrial as to the entire indictment has been demonstrated" (Robles, 219 AD2d at 248) because the court failed "to obtain enough information" whether a mistrial was actually necessary as to all counts (Ferguson, 67 NY2d at 388). Thus, a retrial is precluded (see Smith, 176 AD3d at 1116-1117; Robles, 219 AD2d at 247-248; see generally McNair, 206 AD3d at 1691).
Entered: March 15, 2024
Ann Dillon Flynn
Clerk of the Court