[880 NE2d 863, 850 NYS2d 377]

The People of the State of New York, Respondent, v Winston Gajadhar, Appellant.

Argued November 13, 2007; decided December 18, 2007

## POINTS OF COUNSEL

*Paul Wiener*, New York City, and *Steven Banks* for appellant. If a criminal defendant is tried before a jury, the constitutional and statutory requirement that the jury consist of 12 persons is nonwaivable and, therefore, appellant's conviction by an 11-person jury must be reversed, notwithstanding his consent. (*People v Page*, 88 NY2d 1; *Cancemi v People*, 18 NY 128; *People v Ahmed*, 66 NY2d 307; *Williams v Florida*, 399 US 78; *People v Ryan*, 19 NY2d 100; *People v Mitchell*, 266 NY 15; *People v Thorn*, 156 NY 286; *Stokes v People*, 53 NY 164; *People v Rathbone*, 145 NY 434; *People v Warren*, 145 AD2d 966.)

*Robert M. Morgenthau, District Attorney*, New York City (*Hilary Hassler* and *Mark Dwyer* of counsel), for respondent. Defendant executed a valid, written waiver of his right to a jury of 12 in full compliance with provisions of the state constitution. He should be bound by that waiver. (*Cancemi v People*, 18 NY 128; *People v Page*, 88 NY2d 1; *People v Ryan*, 19 NY2d 100; *People v Lester*, 149 AD2d 975; *Matter of Bell v Sherman*, 174 AD2d 738; *Matter of Stressler v Hynes*, 169 AD2d 750; *Williams v Florida*, 399 US 78; *People v Cosmo*, 205 NY 91; *Patton v United States*, 281 US 276; *People v Mitchell*, 266 NY 15.)

## OPINION OF THE COURT

GRAFFEO, J.

After jury deliberations commenced in this case, one of the jurors became ill and was hospitalized. Opposing a mistrial, de-

fendant asked that the deliberations continue with the remaining 11 jurors. The court granted defendant's request and defendant executed a written waiver of his right to a jury of 12 citizens in open court. We must decide whether article I, section 2 of the state constitution permits a defendant to consent to a deliberating jury of less than 12 individuals. We hold that the waiver in these circumstances was valid.

## I

Defendant Winston Gajadhar and his business associate, Tony Norng, operated an automobile repair business in Brooklyn. When the shop closed in 1994, the men believed that they were owed $1,500 from Sammi Fiki for work performed on a taxicab. Norng and defendant decided that defendant would attempt to collect the monies due from Fiki.

When defendant went to Fiki's office to discuss the matter, Fiki stated that he would only speak to Norng. Defendant later returned to Fiki's premises with another man (not Norng) and found that Fiki had been joined by his brother, Mosad, and a man named Hisham. After Fiki denied owing the money, defendant told his companion to "take care of them." The man locked the office door and produced a handgun. A scuffle ensued and, during the melee, Mosad, Hisham and Fiki were shot. After defendant and his accomplice fled, emergency workers responded and transported the victims to a hospital. Fiki and Hisham survived, but Mosad did not.

The police came to suspect that defendant was involved in the crime but believed that he had escaped to his native country of Trinidad. Defendant eventually returned to the United States, securing a job at another automobile repair shop. At some point he made incriminating statements to one of his coworkers who, unbeknownst to defendant, was cooperating with the Federal Bureau of Investigation (FBI) regarding an unrelated matter. The coworker shared defendant's statement with an FBI agent.

In 1999, a team of NYPD officers and FBI agents went to defendant's workplace but defendant became aware that the authorities were looking for him and he managed to elude capture again. He returned to Trinidad but was not permitted to enter the country because he produced a fake passport. Defendant was detained by authorities until United States marshals took him into custody and brought him back to New York.

Defendant was tried before a 12-member jury along with several alternate jurors. At the end of the case, defense counsel informed the trial court that, in the event a juror became unavailable after deliberations began, defendant would not consent to the substitution of an alternate juror. Because substitution without a defendant's consent is prohibited by CPL 270.35 (1), the court dismissed the alternate jurors before deliberations began.

On the third day of deliberations, a juror became ill and had to be hospitalized for approximately one week. The court and the parties were aware that it had been difficult to secure the attendance of all the witnesses, some of whom had to travel from other countries, and that a retrial would be burdensome for all involved. Defense counsel told the court that defendant wanted deliberations to continue with the remaining 11 jurors. The People raised a concern that *Cancemi v People* (18 NY 128 [1858]) prohibited a criminal defendant from consenting to a jury of less than 12.

Supreme Court granted defendant's request, noting that, after *Cancemi* was decided, article I, section 2 of the state constitution was amended to allow a defendant to waive the right to a 12-person jury under proper circumstances, provided that the waiver is made in writing and in open court. Defendant executed the required waiver and deliberations resumed. Defendant was eventually acquitted of intentional murder in the second degree, two counts of assault in the first degree and two counts of attempted second-degree murder, but he was convicted of attempted robbery in the first degree and felony murder in the second degree. Supreme Court sentenced defendant to an aggregate term of 20 years to life in prison.

On appeal, defendant adopted a position contrary to that presented during trial—he claimed that the state constitution does not allow a defendant to consent to a jury of less than 12 members in any situation. The Appellate Division rejected defendant's contention and upheld the convictions. A Judge of this Court granted leave and we now affirm.

## II

The number 12 has long been associated with trial by jury but no one knows why or when the common law settled on that figure (*see e.g. People v Cosmo*, 205 NY 91, 96 [1912] ["(w)hen or how that number acquired its historic sacredness no one can tell, for the origin of the institution itself has been lost in the

darkness of antiquity"]). Some legal commentators speculate that the number has religious significance (*see e.g.* 1 Edward Coke, Institutes of the Laws of England, at 155a [1st Am ed 1812]).[1] It has also been said that a jury of 12 evolved from certain ancient practices, such as convening 12 individuals with knowledge of a disputed matter to determine the truth or requiring a person to defend an action by swearing an oath of innocence attested to by 11 other individuals (*see e.g.* Proffatt, A Treatise on Trial by Jury § 12, at 16; *id.* § 28, at 41-42; Wells, *The Origin of the Petty Jury*, 27 L Q Rev 347, 359 [1911]; Constitutions of Clarendon § 9 [1164]). Regardless of origin, the number 12 was eventually regarded with "superstitious reverence" (Scott, Fundamentals of Procedure in Actions at Law, at 76 [1922]) and "sometime in the 14th century the size of the jury at common law came to be fixed generally at 12" (*Williams v Florida*, 399 US 78, 89 [1970]).

The common-law tradition of a 12-person jury was exported to America in the colonial era and gained explicit recognition in the original Charter of Liberties and Privileges enacted by the first Legislature in 1683 (*see* Charter of Liberties and Privileges § 17 [1683], reprinted in 1 Lincoln, Constitutional History of New York, at 101-102). The right was also recognized in the first constitution after New York became a state (*see* 1777 NY Const art XLI). Although the constitution of 1777 did not specifically refer to the number 12, it provided that the right to a jury trial as it existed in New York before the adoption of the constitution was to be continued (*see id.*).

The parameters of the right to a jury trial were later modified by successive state constitutional amendments (*see e.g.* 1821 NY Const, art VII, § 2; 1846 NY Const, art I, § 2; 1938 NY Const, art I, § 2). The 1821 amendment altered the original language slightly without affecting the meaning of the provision. But, in 1846, an amendment added a new principle to the state constitution—the ability of parties in a civil action to waive the right to a jury trial. This was a significant modification that allowed

---

**1.** *See also* Proffatt, A Treatise on Trial by Jury § 76, at 112 n 4 (1877) ("If the twelve apostles on their twelve thrones must try us in our eternal state, good reason hath the law to appoint the number twelve to try us in our temporal. The tribes of Israel were twelve, the patriarchs were twelve, and Solomon's officers were twelve" [internal quotation marks omitted]); *id.* § 9, at 11 n 2 (stating that 12 was first adopted in 725 A.D. by a king of Wales who explained that just "as Christ and his twelve apostles were finally to judge the world, so human tribunals should be composed of the king and twelve wise men" [internal quotation marks omitted]).

parties not only to consent to trial by a judge serving as the factfinder, but also permitted litigants to "agree to a jury of six, or to other variations in traditional procedure" (Problems Relating to Bill of Rights and General Welfare, 1938 Rep of NY Constitutional Convention Comm, vol 6, at 12 [hereinafter Poletti Report]; *see e.g. Sharrow v Dick Corp.*, 86 NY2d 54, 59 [1995]). Of course, the fact that the constitution was amended to clearly provide for the waiver of a 12-person jury in civil cases meant that the opposite was also true—the right could not be waived in criminal cases.

Against this backdrop, in 1858 this Court decided *Cancemi v People* (18 NY 128 [1858]). In that case, 12 jurors had been empaneled for the defendant's murder trial. During the proceedings, one juror had to be discharged, albeit at the express request of the defendant. As a result, the guilty verdict was rendered by 11 jurors.

This Court concluded that a verdict reached by an 11-member jury violated article I, section 2 of the state constitution, which at that time included no language suggesting that a criminal defendant could waive a jury trial as the 1846 amendment had authorized for civil cases. According to the Court, the common-law jury of 12 was a constitutional "mode of proceeding" in criminal cases that could not be altered by the consent of the parties and, hence, the defendant's approval of the juror's discharge "was a nullity" (*id.* at 137, 138). The Court reasoned that "[i]f a deficiency of one juror might be waived, there appears to be no good reason why a deficiency of eleven might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone" (*id.* at 138).

Following *Cancemi*, questions were raised about the efficacy of a ban on jury trial waivers in criminal cases. This culminated in a 1935 proposal by the Judicial Council seeking legislative adoption of a concurrent resolution in favor of a constitutional amendment to include noncapital criminal cases within the scope of the waiver language that had been added to article I, section 2 in 1846 for civil trials (*see* 2d Rep of NY Jud Council, at 97, reprinted in 1936 NY Legis Doc No. 48 [C], at 3). The Council recognized that the proposed language was broad enough to "legalize trial by jury of less than twelve men, as well as a complete waiver of the jury" but that the exact scope of the amendment would have to be determined by the judiciary (2d Rep of NY Jud Council, at 100). The Council firmly believed

that there was "little doubt at present that such waiver permitted under proper conditions w[ould] be a desirable and valuable part of criminal procedure" (*id.*).

The Legislature passed the resolution and submitted the proposed constitutional amendment to the voters for approval. The electorate was to decide whether "defendant[s] in all criminal cases, except those in which the crime charged may be punishable by death," should be able to waive a jury trial (*see* L 1935, vol 1-2, at 1917). After the resolution achieved second passage in the 1937 session, the amendment was approved by voters and became effective on January 1, 1938 (*see* Poletti Report at 8).[2]

Later that year, a constitutional convention was conducted and new language was inserted in article I, section 2 to specify the procedure for obtaining a proper waiver (*see* 2 Rev Rec, 1938 Constitutional Convention, at 1273-1282). After these two amendments, article I, section 2 read, in relevant part, as follows:

> "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever; but a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law. . . . A jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death, by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense. The legislature may enact laws, not inconsistent herewith, governing the form, content, manner and time of presentation of the instrument effectuating such waiver" (1938 NY Const, art I, § 2).

The language of this constitutional provision has remained unchanged since 1938. In addition, article VI, section 18 also references criminal juries by stating that "crimes prosecuted by indictment shall be tried by a jury composed of twelve persons, unless a jury trial has been waived as provided in section two of article one" (NY Const, art VI, § 18 [a]). Thus, whether the procedure used in this case was constitutionally permissible

---

**2.** Two years earlier, article I, section 2 had been amended to permit five-sixths verdicts in civil cases (*see* Poletti Report at 8).

depends on the scope of the waiver envisioned in article I, section 2.

### III

Following the 1938 amendments, the first major decision by this Court on the issue of jury trial waivers was *People v Ryan* (19 NY2d 100 [1966]). In that case, defense counsel consented to the substitution of an alternate juror for a deliberating juror approximately five hours after deliberations had begun. At that time, section 358-a of the Code of Criminal Procedure allowed such a substitution to occur.

This Court concluded that the substitution violated the right to a 12-person jury because the alternate was kept away from the deliberations for five hours and, during that period, the alternate had ceased to function as a juror (*see* 19 NY2d at 105). As a result, the Court determined that "13 jurors participated in the deliberations" (*id.* at 103) in contravention of "the Constitution of this State . . . [which] prohibits the substitution of an alternate juror—in effect a 13th juror—after the jury has begun its deliberation" (*id.* at 104-105). Notably, in response to the People's contention that the constitution permitted a defendant to waive the right to a 12-person jury altogether, the Court explained that "[t]he consent given by the defendants' counsel . . . did not satisfy the constitutional requirements for waiver and, therefore, no waiver occurred" since article I, section 2 only contemplated a defendant's personal waiver in writing (*id.* at 106). The implication of this ruling is that, had the defendants themselves consented to the substitution of the alternate in writing and in open court, there would not have been a constitutional problem.

In the aftermath of *Ryan*, the Legislature adopted section 270.35 of the Criminal Procedure Law dealing with the substitution of an alternate juror. That statute, unlike section 358-a of the Code of Criminal Procedure, explicitly incorporates the waiver requirements of article I, section 2 by providing that an alternate juror can be substituted for a juror after deliberations have commenced if the defendant personally consents to the substitution in writing and in open court.

Then, in *People v Page* (88 NY2d 1 [1996]), this Court was asked whether a defendant could orally consent to the substitution of an alternate juror after deliberations commenced. We answered that oral consent by a defendant was insufficient because strict compliance with the requirements of CPL 270.35

was essential to effectuate a valid waiver under article I, section 2 (*see id.* at 10). In so holding, we recognized that the analysis in *Cancemi* had been premised on the pre-amendment text of the state constitution, which had not allowed jury trials to be waived in criminal cases. Cognizant of the history underlying the 1938 amendments that made waiver permissible, we explained that "the purpose of the specification in CPL 270.35 for consent memorialized in a writing signed in open court is to ensure that the State constitutional requirements for waiving a jury trial are followed before an alternate is substituted for a regular juror once deliberations have begun" (*id.* at 9). Therefore,

> "a defendant could waive the right to a jury trial—as well as the inclusory right to a jury of 12—and thereby consent to substitution of an alternate for a deliberating juror, 'by a written instrument signed by the defendant in person in open court before and with the approval of a judge or justice of a court having jurisdiction to try the offense' " (*id.* at 8, quoting NY Const, art I, § 2).

## IV

There is no doubt that *Cancemi* was decided correctly in 1858. At that point, article I, section 2 unequivocally permitted jury waivers only in civil cases. Conversely, the constitution did not allow criminal defendants to waive the right to a jury trial, which meant that defendants could not consent to jury deliberations by less than 12 jurors (*see generally People v Cosmo*, 205 NY at 96).

In our view, however, the history of article I, section 2 and our subsequent decisions construing the meaning of the provision's evolving text reveal that there is no longer a constitutional impediment to a defendant consenting to the continuation of deliberations by 11 jurors in conformance with the explicit procedures set forth in article I, section 2. The 1938 constitutional amendments clearly dispelled the notion that a defendant cannot consent to an alteration of the common-law jury of 12 in a noncapital criminal case. Since the waiver language in article I, section 2 for civil cases permits juries of less than 12, unlike the dissent, we are not persuaded that the identical language, when applied to criminal cases, prohibits a

defendant's waiver allowing deliberations to continue with 11 jurors.[3]

Linguistic considerations aside, because a noncapital criminal defendant is free to waive a jury entirely in order to have a judge act as the finder of fact (*see* CPL 320.10 [1])—something that was not permissible when *Cancemi* was decided—it follows that if a juror becomes unavailable after deliberations have begun and there are no alternates that can be substituted, a defendant should be permitted to request that an 11-member jury decide his fate.[4] Similarly, if criminal defendants can waive the common-law right and consent to deliberations in which 13 jurors are involved (*see People v Page*, 88 NY2d at 8) they should also be able to seek deliberations by 11 jurors if circumstances arise that warrant such a request. If the number 12 truly is sacrosanct, it would have to be required in all conceivable circumstances.

Of course, the constitution authorizes waiver only with the approval of the trial judge. Such a situation may arise when a deliberating juror becomes unavailable due to illness or other unexpected occurrence and the alternate jurors have been discharged at the defendant's request. In this unusual circumstance, "the waiver is tendered in good faith and is not a strategem to procure an otherwise impermissible procedural advantage" (*People v Duchin*, 12 NY2d 351, 353 [1963]; *see People ex rel. Rohrlich v Follette*, 20 NY2d 297, 301 [1967]). Allowing a defendant to decide whether deliberations should continue also provides the accused with more options than would otherwise be available if the right to a jury trial were as rigid and inflexible as defendant maintains. For example, if a defendant believes that a favorable outcome is possible, he may prefer to consent to deliberations continuing with 11 jurors rather than having to

---

**3.** The relevant language of article I, section 2 for civil cases reads: "a jury trial may be waived by the parties in all civil cases in the manner to be prescribed by law." Using parallel language for criminal cases, section 2 states, "[a] jury trial may be waived by the defendant in all criminal cases, except those in which the crime charged may be punishable by death . . . ."

The dissent also maintains that we have taken a "drastic departure" from the text of article VI, section 18 (dissenting op at 451). This is not so. That provision requires that all indictments be tried before a 12-member jury unless the defendant waives that right under article I, section 2. Because we believe that article I, section 2 permits a defendant to consent to 11 deliberating jurors under the circumstances presented, our decision is not inconsistent with the language of article VI, section 18.

**4.** We also note that an 11-member jury does not contravene the federal constitution (*see Williams v Florida*, 399 US at 86).

endure the ordeal, risk and expense of a second trial. But if the defendant believes that he is more likely to prevail at a retrial, the constitution ensures that this remedy is available to a defendant as well.

Equally significant is the fact that permitting a waiver of the common-law jury under article I, section 2 is consistent with the principle that criminal defendants can waive many fundamental constitutional rights: the right to confront accusers (*see e.g. People v Hansen*, 95 NY2d 227, 230 [2000]); the right to counsel (*see e.g. People v Gillian*, 8 NY3d 85, 88 [2006]); the privilege against self-incrimination (*see e.g. People v Lee*, 58 NY2d 491, 494 [1983]); the right to testify and to present a defense (*see e.g. People v Henriquez*, 3 NY3d 210, 217 [2004]); the right to be free from unreasonable searches and seizures (*see generally People v Esajerre*, 35 NY2d 463, 467 [1974]); and the right to be present during trial proceedings (*see e.g. People v Velasquez*, 1 NY3d 44, 48 [2003]). After a defendant enters a knowing, voluntary and intelligent waiver of any of these rights, that choice cannot be challenged on appeal (*see People v Henriquez*, 3 NY3d at 216-217). We do not see sufficient justification for applying a different rule to the right to a jury trial. Contrary to the dissent's analysis, the constitution now entrusts to a defendant the decision whether to allow a jury to continue deliberating with 11 members when a juror becomes unexpectedly unavailable. Therefore, the rights guaranteed by article I, section 2 are personal to the accused.

V

Here, after a deliberating juror was hospitalized and there were no alternate jurors that could be substituted, defendant decided that it was in his interests to be judged by the remaining jurors he had a hand in choosing, rather than accepting a mistrial and subjecting himself to the ordeal of a second trial. Defendant made a good faith request that deliberations continue with the remaining 11 jurors and he executed a written waiver in the manner specified by the constitution that was approved by the trial judge. "Regardless of how unwise" defendant now thinks "that decision may have been, it was his to make" and he must "accept the decision he knowingly, voluntarily and intelligently made" along with "the consequences of his intentional actions and choices" (*id.* at 216-217). In light of this determination, defendant's remaining contention is academic.

Accordingly, the order of the Appellate Division should be affirmed.

CIPARICK, J. (dissenting). Because the constitutional (*see* NY Const, art VI, § 18) and statutory (*see* CPL 270.05 [1]) requirement that a jury in a felony case consist of 12 persons is not waivable, defendant's conviction by an 11-person jury of felony murder and attempted robbery must be reversed, notwithstanding defendant's consent to proceed with 11 jurors after one juror became unavailable due to illness.

Contrary to the majority's assertion, *Cancemi v People* (18 NY 128 [1858])—after almost 150 years—remains good law. A defendant exercising the right to a trial by jury must be tried by a panel of 12, and neither a court, a prosecutor nor a defendant can alter the parameters of this fundamental mode of a judicial proceeding; that modification is solely within the province of the Legislature. In *Cancemi*, we held that the constitutionally and legislatively-determined fundamental mode of a court's proceeding is essential to ensuring due process of law and protecting a defendant's liberty, and that the public interest in ensuring that citizens are not punished without due process of law trumps a defendant's ability to control the trial. We further held that the mode of proceeding is not a right personal to a defendant which he or she can affect: "the trial must be by the tribunal and in the mode which the constitution and laws provide, without any essential change [and t]he public officer prosecuting for the people has no authority to consent to such a change, nor has the defendant" (*Cancemi* at 138).

The majority suggests that *Cancemi*, although never overruled, is no longer a bar to a defendant's consent to a jury consisting of fewer than 12. This is so, because our concern that allowing a waiver of one juror would lead to a waiver of the entire jury—not available for criminal trials in 1858—has been alleviated by subsequent constitutional and statutory amendments that permit the waiver of the right to a jury trial in favor of a bench trial (*see* NY Const, art I, § 2; CPL 320.10). However, in deciding *Cancemi*, we stated that:

> "It would be a highly dangerous innovation, in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and laws establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors, and we think it ought not to be tolerated" (*Cancemi*, 18 NY at 138).

The majority opines that

"the history of article I, section 2 and our subsequent decisions construing the meaning of the provision's evolving text reveal that there is no longer a constitutional impediment to a defendant consenting to the continuation of deliberations by 11 jurors in conformance with the explicit procedures set forth in article I, section 2" (majority op at 446).

I strongly disagree.

Article I, section 2 of the New York State Constitution refers to the complete waiver of a jury trial in favor of a bench trial, as the corresponding statutory provision—CPL 320.10—indicates. It does not refer to the waiver of a single juror. The majority seeks to tie the legislative history of the 1938 amendment to article I, section 2—authorizing a waiver of jury trial in favor of a bench trial—to the proposition that a defendant may waive the right to be tried by a 12-person jury by relying on the Judicial Council's recommendations for that amendment. The Judicial Council "was created by statute in 1934 as a permanent research body to advise the [L]egislature and the courts on improvements in the administration of judicial justice" (Saxe, *The Judicial Council of the State of New York; Its Objectives, Methods, and Accomplishments*, 35 Am Pol Sci Rev 933, 933-934 [Oct. 1941]). I do not believe that the Judicial Council's isolated statement that "[i]t remains to be determined by judicial interpretation whether the proposed amendment will legalize trial by jury of less than twelve men, as well as a complete waiver of the jury" (2d Rep of NY Jud Council, at 100) indicates that it had thoughtfully considered allowing a defendant to consent to a jury of fewer than 12 persons, as the majority suggests (*see* majority op at 443-444). Further, the majority's statement that: "The [Judicial] Council firmly believed that there was 'little doubt at present that such waiver permitted under proper conditions w[ould] be a desirable and valuable part of criminal procedure' " (majority op at 443-444, quoting 2d Rep of NY Jud Council, at 100) simply refers to the primary subject of the 1938 amendment, a defendant's ability to consent to a bench trial in lieu of a jury trial, not his or her ability to consent to an 11-person jury. Thus, there is no evidence in the 1938 legislative history of the amendment to article I, section 2 that the Legislature itself even considered legalizing the practice of allowing a defendant to consent to being tried by fewer than 12 jurors.

The majority suggests that because the waiver language in article I, section 2 for civil cases is identical to the waiver language for criminal cases, a defendant should be allowed to waive a trial by fewer than 12 jurors. We addressed this proposition in *Cancemi*. There, we noted that

> "[t]here is, obviously, a wide and important distinction, between civil suits and criminal prosecutions, as to the legal right of a defendant to waive a strict substantial adherence to the established, constitutional, statutory and common law mode and rules of judicial proceedings. This distinction arises from the great difference in the nature of such cases, in respect to the interests involved and the objects to be accomplished" (*Cancemi*, 18 NY at 135-136).

There has been no constitutional or legislative amendment permitting a trial by fewer than 12 jurors and no "judicial interpretation"—until today—that allows such a drastic departure from the text of article VI, section 18 of the New York Constitution—adopted in 1961. That section formally enshrined in the language of our Constitution the number of jurors required in a criminal case—"that crimes prosecuted by indictment shall be tried by a jury composed of twelve persons, unless a jury trial has been waived as provided in section two of article one of this constitution" (NY Const, art VI, § 18 [a]).

Neither has our decisional law eroded this principle. *People v Ryan* (19 NY2d 100 [1966]) and *People v Page* (88 NY2d 1 [1996]), relied heavily upon by the People, do not support the proposition that a defendant may consent to being tried by fewer than 12 persons. Both of those cases involved the interpretation of a statute allowing for the substitution of a juror with an alternate juror.

The primary issue in *Ryan* was whether defense counsel could consent to the admission of an alternate juror into deliberations some five hours after they had begun. The Court disposed of that issue by holding that "the Constitution of this State, as it has been construed, prohibits the substitution of an alternate juror—in effect a 13th juror—after the jury has begun its deliberation" (*Ryan*, 19 NY2d at 104-105). The constitutional impediment to a defendant consenting to the substitution of an alternate juror after deliberations had begun that arose in *Ryan* was removed by the Legislature when it enacted CPL 270.35 in 1970.

In *Page,* the issue was whether the defendant could consent orally to the substitution of a juror pursuant to CPL 270.35 (1), which provides that "the defendant must consent to such replacement [and s]uch consent must be in writing and must be signed by the defendant in person in open court in the presence of the court." The majority construes the Court's statement "that a defendant could waive the right to a jury trial—as well as the inclusory right to a jury of 12—and thereby consent to substitution of an alternate for a deliberating juror" (*Page,* 88 NY2d at 8) to mean that a defendant may consent to a jury of fewer than 12 persons. However, the phrase "the inclusory right to a jury of 12" does not refer to the defendant's ability to consent to a jury of fewer than 12 persons, but refers to the defendant's ability to consent to the substitution of a juror—in effect creating the 13th juror (*see Page* at 8, citing *Ryan* at 104-105). Thus, a defendant forgoes "the inclusory right to a jury of 12" when consenting to the substitution of an alternate juror. In sum, neither *Ryan* nor *Page* provide support for the majority's proposition that a defendant may consent to a jury composed of fewer than 12 persons, and "the inclusory right to a jury of 12" can only refer to the substitution of a juror with an alternate—a 13th or maybe even a 14th or 15th juror, not a decrease in the number of jurors deliberating and ultimately reaching a verdict.

As it is well established that constitutional language must be given its plain meaning, the clear and unambiguous language of article VI, section 18 dictates the requisite number of jurors. There is no language in the Constitution that permits a felony jury trial with fewer than 12 jurors. The People maintain—and the majority agrees—that we have allowed criminal defendants to waive many fundamental constitutional rights, such as the right to confront accusers, the right to counsel, the privilege against self-incrimination, the right to testify and to present a defense, the right to be free from unreasonable searches and seizures, and the right to be present during trial proceedings (*see* majority op at 448). Nevertheless, these rights cannot be characterized as fundamental "to the organization of the tribunals or the mode of proceeding prescribed by the constitution and the laws" (*Cancemi,* 18 NY at 137). Because the right to be tried by 12 persons is fundamental to the mode of proceeding and

not personal to a defendant, it is distinguishable from the other rights that we have permitted a criminal defendant to waive. The right to be tried by a jury of 12—unless waived in favor of a bench trial—is inviolate and cannot be waived.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Judges READ, SMITH, PIGOTT and JONES concur with Judge GRAFFEO; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge KAYE concurs.

Order affirmed.