OPINION OF THE COURT
Vincent M. Del Giudice, J.
The defendant is charged, acting in concert with unapprehended individuals, with murder in the first and second degree, etc. Trial commenced with the selection of a jury on May 11, 2011.[1] Twelve jurors and four alternates were selected. On May 23, 2011, the jury was charged as to three counts: murder in the first degree (Penal Law § 125.27 [1] [a] [viii]) and two counts of murder in the second degree (Penal Law § 125.25 [1]).
The jury deliberated, without reaching a verdict, on May 23rd and May 24th.[2]
On Wednesday, May 25th, the clerk of the court received a telephone call from a family member of deliberating juror number six, reporting that the juror was hospitalized with injured ribs. The clerk asked the family member to have the juror call the judge after the juror knew more about his availability for continued service.
Since, upon the consent of the parties, the alternates had not been discharged, the court inquired of defendant’s counsel if his client was willing to substitute the first alternate for the recently hospitalized juror. After conferring, counsel stated his client would not consent to the substitution of an alternate juror. The court then asked counsel if his client would consent to ordering the remaining 11 jurors to attempt to render a verdict (see People v Gajadhar, 9 NY3d 438 [2007]). After conferring, counsel stated the defendant would not waive his constitutional right to be tried by 12 jurors (NY Const, art I, § 2). Counsel then requested a mistrial be declared. The People opposed that application.
*548 Juror six eventually called and informed me that he was currently in the hospital but that he was about to be sent home.[3] The juror stated he had been advised by his doctor to stay in bed for three days and had been given a prescription for Vicodin.[4] The court inquired as to whether the juror could ask his doctor if he could, despite the doctor’s prior recommendation, return to jury deliberations the following day, provided his physical condition improved. After consulting with his doctor, the juror agreed to advise the court, early the next morning, as to whether he was capable of deliberating, without being adversely affected by the pain medication. The juror stated that he wanted to continue with his jury service.
The court reserved decision on counsel’s application for a mistrial and ordered all parties, and the jurors, to return by 10:00 a.m. the following morning.
The following day, Thursday, May 26th, juror six called the court clerk and informed her that he was feeling well enough to continue deliberating. The clerk advised the juror to speak to the court after the judge was on the bench and the trial attorneys were present. After the parties were in place, the court again spoke to juror six by speakerphone in open court. The juror indicated that despite his personal discomfort, he was anxious to return to continue deliberations.[5]
The defense then made another motion for a mistrial, claiming that by discharging the deliberating jurors at 4:20 p.m. on Tuesday evening, and only having the jury return to deliberations after more than 24 hours had elapsed the following Thursday morning, the court was in violation of CPL 310.10 (2), which limits the court’s ability to suspend jury deliberations for a period not to exceed 24 hours. The People took no position on defendant’s motion. The court orally denied defendant’s motion.[6]
Juror six arrived to the courthouse shortly before 12 noon. He was brought into the courtroom for an in camera inquiry regarding his physical status and whether he felt well enough to *549 continue deliberating.[7] Juror six indicated that although he was in some pain, he had not taken any pain medication since the previous evening, was clear headed and anxious to resume deliberations. The court advised the juror that accommodations would be made if the juror’s physical condition changed for the worse. Although offered an opportunity to question the juror, neither attorney elected to do so and both consented to the court’s questioning of the juror.
Upon the consent of the parties, juror six was reunited with his fellow jurors and deliberations continued.[8]
At issue herein are the options available to a trial court, within the restrictions of CPL 310.10 (2), whenever a deliberating juror is unexpectedly incapacitated and unable to resume deliberations within 24 hours.
Defendant contends CPL 310.10 (2) prohibits a court from suspending deliberations for a period exceeding 24 hours, excluding a Saturday, Sunday or holiday, without the consent of the defense. Since deliberations in the pending matter had been suspended prior to 4:30 p.m., as per the order of the Administrative Judge, defendant contends that unless deliberations resumed prior to 4:30 p.m. the following day, he is entitled to a mistrial, due to the court’s noncompliance with CPL 310.10 (2).
Surely an adoption of the defendant’s position flies in the face of the legislative intent and places trial courts in an impossible situation.
CPL 310.10 (2) reads, in pertinent part:
“At any time after the jury has been charged or commenced its deliberations, and after notice to the parties and affording such parties an opportunity to be heard on the record outside of the presence of the jury, the court may declare the deliberations to be in recess and may thereupon direct the jury to suspend its deliberations and to separate for a reasonable period of time to be specified by the court, not to exceed twenty-four hours, except that in the case of a Saturday, Sunday or holiday, such separa *550 tion may extend beyond such twenty-four hour period.”
Enacted in an era when juries were sequestered under the prevalent belief that they would be subject to tampering and improper influences if removed from the supervision of court personnel, the statute limits the declared period of the suspension of a jury’s deliberations to 24 hours, except in the case of a Saturday, Sunday or holiday.
In 1991, the Court of Appeals approved a defense waiver of jury sequestration (People v Webb, 78 NY2d 335 [1991]).
In 1995, the Legislature enacted CPL 310.10 (2), granting trial courts the authority to dispense with sequestration in any case, other than a class A felony, or a class B or C violent felony, without the consent of the defense, provided all parties were afforded an opportunity to be heard. The statute was to be temporary for five years, and included, as subdivision (3), a requirement that the Chief Administrator of the Office of Court Administration prepare a report on the number of cases where the court separated the jury pursuant to this legislation and the effects, if any, of such separation.
As a result of the report compiled by the Chief Administrator, the courts and legislators became aware that suspending jury deliberations did not result in an increase in jury tampering, or increase the number of mistrials. Effective May 30, 2001, the Legislature amended CPL 310.10 (2), to give trial judges the discretion whether to sequester jurors in all trials, regardless of the severity of the crimes charged, after notice to the parties and affording an opportunity to be heard.[9]
The legislative history of CPL 310.10 provides:
“This bill would make permanent current provisions within the Criminal Procedure Law that allow judges in criminal trials to use their discretion as to whether or not a deliberating jury should be sequestered . . .
“[T]his bill eliminates the exceptions in Section 310.10(2) of the Criminal Procedure Law that prevent trial court judges from using discretion in sequestering deliberating jurors in cases involving Class A felonies, or Class B or Class C violent *551 felonies. The bill makes permanent the provisions allowing judicial discretion by removing the sunset provisions . . .
“[T]hese provisions have been extended annually since 1995, due to cost savings associated with non-sequestered juries.”[10] (Bill Jacket, L 2001, ch 47.)
The historical background has been provided in order to highlight that the 24-hour provision contained in subdivision (2) was drafted in an era of sequestered juries. In the current day, jurors can be called from almost any occupation or trade. Smart phones and laptop computers allow a juror to be accessible to his or her home and office during jury service, when not in the courtroom.* [11]
Sequestration was a practice whose utility was shown to be inconsequential and whose costs, both financial and personal, were extraordinary. Although not a “fundamental” right of a criminal defendant, prior practice mandated sequestration unless it was expressly and affirmatively waived by the defendant (People v Agramonte, 87 NY2d 765, 770 [1996]; Matter of Morgenthau v Williams, 229 AD2d 361, 363 [1st Dept 1996], lv denied 88 NY2d 813 [1996]).
Of course, courts have historically permitted criminal defendants to waive fundamental constitutional rights, such as the right to a 12-juror trial on a felony indictment. “[Permitting a waiver of the common-law jury under article I, section 2 is consistent with the principle that criminal defendants can waive many fundamental constitutional rights” (People v Gajadhar, 9 NY3d 438, 448 [2007]).
In the matter before this court, the defendant sought to manipulate the rights afforded him in order to gain a tactical advantage, merely because one of the jurors required hospitalization during deliberations. Defendant sought to use the 24-hour provision of CPL 310.10 (2) not as a shield, but as a sword, in an attempt to force a mistrial and to require the prosecution to retry the case for a third time, in the hope that one or more of the reluctant civilian witnesses would not appear at a third *552 trial,[12] or that the transcript of the witness’ prior testimony could be successfully used to impeach the witness’ testimony at a third trial.
The parties, of course, are “free to waive the statutory requirements of continuous deliberations” (Matter of Capellan v Stone, 49 AD3d 121, 125 [1st Dept 2008], lv denied 10 NY3d 716 [2008]), but what happens when a defendant insists on a literal interpretation of the statute that places the court into a situation where it is physically impossible to proceed?
The 24-hour limit would seem not to be of constitutional import, but to ensure that a jury not be held sequestered incommunicado for an excessive period of time. It is a statute to protect jurors from abusive conditions, not to insure a constitutional right afforded a trial defendant. A trial court is entrusted with discretion to determine whether a “manifest necessity” exists to support the declaration of a mistrial (People v Ferguson, 67 NY2d 383, 388 [1986], citing United States v Perez, 9 Wheat [22 US] 579, 580 [1824]). Such discretion, however, is not without limits.
“The reasons underlying the grant of a mistrial may not be illusory; rather, in order fully to protect the defendant’s right to trial by a particular tribunal they must be necessitous, actual and substantial. Thus, if the Judge acts so abruptly as not to permit consideration of the alternatives or otherwise acts irrationally or irresponsibly or solely for convenience of the court and jury or other similar abuse of discretion, retrial will be barred.” (Matter of Enright v Siedlecki, 59 NY2d 195, 200 [1983] [citations omitted].)
Although the court in Siedlecki was concerned about a declaration of a mistrial over the objection of the defendant, clearly the rationale of the decision should apply regardless of who is seeking the mistrial. The Legislature could not have intended for CPL 310.10 (2) to have created an opportunity for a defendant who does not like the way the evidence was presented to the jury to get another chance to counter the evidence against him, solely because a deliberating juror could not reconvene within 24 hours. The Legislature could not have intended to approve of the resulting waste of judicial and court resources, subjecting victims and witnesses to repeat their testimony in subsequent *553 retrials. In the language of Siedlecki, declaration of a mistrial in this circumstance would be “irrational” and “irresponsible” (at 200).
At bar, the court took all steps possible to maintain the integrity of the trial. The jury was sent home on Tuesday, in a timely manner, pursuant to the announced Office of Court Administration cost-saving measures prohibiting overtime for court personnel. When one of the jurors reported being hospitalized the next day, a literal reading of CPL 310.10 (2) would seem to compel a mistrial at the request of the defense. That would be a waste of judicial and court resources. Why prohibit the expense of overtime to court personnel and then require the extraordinary expense of a retrial merely because a single deliberating juror could not deliberate within a 24-hour period?
Fortunately, juror six recovered and resumed deliberations on Thursday morning. The court took the extraordinary step of ordering court personnel to transport the juror to the courthouse, in order to ease the juror’s concerns that he might re-injure his ribs if he was forced to rely on public transportation. After juror six arrived, the defendant again moved for a mistrial, claiming that the one-day suspension in deliberations exceeded the 24-hour provision of CPL 310.10 (2). The application was denied, the jury resumed deliberations.
Pursuant to CPL 310.10 (2), the court suspended jury deliberations and separated the jurors for a period of time not to exceed 24 hours and provided counsel an opportunity to be heard, before doing so, on the record, outside the presence of the jury. The court complied with the statute. The court directed that all jurors return the following morning at 10:00 a.m., well within the 24-hour period specified in the statute.
Eleven jurors returned Wednesday morning. One juror was unable to attend because he was physically unable to comply with the court’s order. The court immediately notified counsel of the situation and gave each attorney an opportunity to be heard. Rejecting defendant’s request for a mistrial, the court, once again, ordered the jury to separate and to return at 10:00 a.m. the following day, which was within 24 hours of the jury’s original recess of deliberations.
On Thursday, the 11 jurors arrived by 10:00 a.m. but did not resume deliberations until juror six arrived shortly before noon. After a brief inquiry into the physical and mental ability of juror six, the court and the parties were satisfied that he was physically and mentally competent to resume deliberations. *554 Juror six then rejoined the other 11 jurors and deliberations continued.
During the entire process, defense counsel was unable to show any prejudice to his client by the delay in deliberations. Counsel merely stated that he wanted a mistrial but set forth no grounds other than an apparent technical violation of CPL 310.10 (2).
The fact that it was physically impossible to resume deliberations within 24 hours was of no fault of the court, of either party or of the juror. Since juror six was physically unable to comply with the court’s lawful order to reconvene within the 24 hours, a mistrial would serve only to give an unfair benefit to a trial defendant. This situation is capable of repetition. Consider the situation where a juror is involved in an automobile accident on the way to court. What if a snowstorm or other natural event makes it impossible for a juror to return to court within the 24 hours? What if, over a weekend adjournment, a juror travels and is unable to return promptly due to a flight cancellation? Would a defendant be entitled to a mistrial in each of these situations? The defendant’s interpretation of the statute is that any delay beyond 24 hours is fatal. This interpretation is possible from a strict reading of the text but it makes no sense. An interpretation equally consistent with the text, and one which is far more reasonable and sensible, is that the Legislature, being familiar with trials, is aware that emergencies occur, and intended to restrict planned adjournments of deliberations not to require a mistrial when an unavoidable event or other emergency occurs. In this case, the jury returned each day within the 24-hour period but was unable to deliberate. That, I believe, is in accordance with the meaning of the statute. Since the jury acquitted this defendant, appellate review of my analysis will not occur.
Thus, this court implores the Legislature to amend CPL 310.10 (2) so that deliberating juries can have deliberations suspended for a reasonable period of time greater than 24 hours “for good cause shown,” or due to “exceptional circumstances.” The addition of either simple phrase will grant trial courts discretion to enforce the statute without being forced to declare a mistrial, which would be an unreasonable and frustrating result, because of some unforeseen, but reasonable, circumstance.

. A previous trial ended in a mistrial on March 15, 2011, during the People’s direct case.

. Due to budgetary restraints, the jury was sent home at 4:15 P.M. on May 23rd and at 4:20 P.M. on May 24th.

. This call was played on speakerphone, in open court, in the presence of all the attorneys and the defendant.

. A narcotic pain reliever.

. The juror requested that he be provided transportation to and from the courthouse, due to the tenderness of his ribs. The court had previously arranged to provide the juror with an escort to court by court personnel.

. This written decision supplements the court’s prior verbal denial of defendant’s motion for a mistrial.

. The attorneys and the defendant were present during this inquiry. The other 11 jurors remained in the jury room.

. Fifteen minutes later, the jury sent a note indicating they had reached a verdict. While the jury acquitted the defendant on all counts, thereby mooting defendant’s motion for a mistrial, the court believes a written decision is required to address the predicament a trial judge is placed in whenever a deliberating juror is unexpectedly hospitalized, or otherwise unavailable due to unforeseen events, and the defense does not agree to a continuance.

. The 2001 amendment omitted the opening preface of CPL 310.10 (2): “In any case other than one where the court’s charge includes a count alleging a crime which is a class A felony or a class B violent felony offense or class C violent felony offense as defined in section 70.02 of the penal law.”

. At the time of this amendment, annual costs for jury sequestration were estimated to be $4 million a year (Bill Jacket, L 2001, ch 47).

. This court requires jurors to have their electronic devices turned off while they are in the courtroom and collects all such devices during deliberations.

. Several material witness orders were granted in this case (see CPL 620.20).