People v Myers (2018 NY Slip Op 04685)

People v Myers

2018 NY Slip Op 04685 [32 NY3d 18]

June 27, 2018

Wilson, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, October 24, 2018

[*1]

The People of the State of New York, Respondent,
v
Steven Myers, Appellant.

Argued June 6, 2018; decided June 27, 2018

People v Myers, 145 AD3d 1596, affirmed.

{**32 NY3d at 19} OPINION OF THE COURT

Wilson, J.

Until 1974, our State's Constitution guaranteed criminal defendants the unwaivable right to indictment by a grand jury. In 1974, the Constitution was amended to provide that defendants{**32 NY3d at 20}could waive that right by signing a written instrument in open court in the presence of their counsel (NY Const, art I, § 6). Because Steven Myers and the court supervising his waiver followed that procedure, we affirm his conviction. We emphasize, however, that the better practice—captured in the relevant model colloquy—is for courts to elicit defendants' understanding of the significance of the right being waived, to minimize future challenges to the effectiveness of the waiver (see NY Model Colloquies, Waiver of Indictment; Superior Court Information Procedure & Colloquy, http://www.nycourts.gov/judges/cji/8-Colloquies/Waiver%20of%20Indictment%20(SCI).pdf [accessed June 22, 2018]).
I.
Steven Myers waived his right to be prosecuted by indictment by a grand jury. Immediately afterward, he pleaded guilty to the third-degree burglary charged in the superior court information (SCI). The record shows the following took place in County Court on July 9, 2012. The court clerk called Mr. Myers' case. Mr. Myers was not present at that time. His attorney and the prosecutor asked to approach, and they had an off-the-record discussion [*2]with the court. Mr. Myers was escorted into the courtroom and conferred with his counsel off the record. The court then said, "We're going to do a brief second call [of other cases], but Mr. Myers will stay at the lectern to meet with [his counsel] on the waiver form." The court continued the calendar call, after which it asked Mr. Myers' counsel if he was ready. Mr. Myers' counsel said he was ready, and the court again called Mr. Myers' case. The court then announced: "The application for grand jury waiver meets the requirements of the statute so I'm going to sign the order approving the waiver and order the information filed." Mr. Myers' counsel acknowledged receipt of the signed order and waived a reading of the SCI in open court. The court immediately moved to a description of the plea agreement Mr. Myers had reached with the prosecutor, to which Mr. Myers allocuted and accepted. During his allocution, Mr. Myers waived his Boykin rights and confirmed he could read and write English, suffered from no physical, mental, or substance-related impairment, and had had sufficient time to discuss the case with his attorney.
On appeal from the judgment of conviction and sentence, Mr. Myers argued his waiver of indictment was invalid because there was no evidence in the record that it was executed in{**32 NY3d at 21} open court and no colloquy with the court on the subject.[FN1] The Appellate Division upheld the validity of the waiver (145 AD3d 1596 [4th Dept 2016]). A Judge of this Court granted Mr. Myers leave to appeal (29 NY3d 1093 [2017]).
II.
Under New York Constitution, article I, § 6,
"[n]o person shall be held to answer for a capital or otherwise infamous crime . . . , unless on indictment of a grand jury, except that a person held for the action of a grand jury upon a charge for such an offense, other than one punishable by death or life imprisonment, with the consent of the district attorney, may waive indictment by a grand jury and consent to be prosecuted on an information filed by the district attorney; such waiver shall be evidenced by written instrument signed by the defendant in open court in the presence of his or her counsel."
Contrary to Mr. Myers' first argument, the record evidences that the waiver was signed in open court, as set forth in the Constitution. The transcript shows that the court directed Mr. Myers and his counsel to remain at the lectern to discuss the waiver form and includes the court's finding that the "waiver meets the requirements." Mr. Myers' attorney notarized Mr. Myers' signature on the waiver on the day of the court appearance. The court's order approving the waiver expressly states that Mr. Myers executed it "in open court in the presence of his attorney." That record evidence sufficiently demonstrates that Mr. Myers signed the waiver in open court.
Mr. Myers' second argument rests, albeit mistakenly, on a vital and settled proposition: "It is axiomatic in our jurisprudence that a waiver of a substantial right must be made knowingly and intelligently" (People v Weinberg, 34 NY2d 429, 431 [1974]). That axiom applies to "many fundamental constitutional rights: the right to confront accusers; the right to counsel; the privilege against self-incrimination; the right to testify and to present a defense; the right to be free from unreasonable searches and seizures; and the right to be present{**32 NY3d at 22} during trial proceedings" (People v Gajadhar, 9 NY3d 438, 448 [2007] [citations omitted]). In many instances, the requisite affirmative showing that those rights have been knowingly, voluntarily, and intelligently waived will include a direct colloquy between the court and the defendant (see People v Sougou, 26 NY3d 1052 [2015]; People v Conceicao, 26 NY3d 375 [2015]).
[*3]
In this instance, however, our Constitution specifies that persons held for the action of a grand jury may waive indictment and consent to be prosecuted by information when such waiver is "evidenced by written instrument signed by the defendant in open court in the presence of his or her counsel."[FN2] Its drafters specified—as a matter of constitutional law—the method by which the grand jury right may be waived. Mr. Myers' argument that those circumstances do not suffice to demonstrate that a waiver is knowing, voluntary, and intelligent runs into an obstacle he would not face were we concerned with a statute alone: here, the Constitution itself conclusively precludes a holding that a written waiver of the right to indictment by grand jury is always ineffective unless a judge conducts an oral inquiry on the record.
We decline to read into the Constitution a requirement that its drafters abjured. Unlike cases involving the waiver of the right to a jury trial, the Constitution does not require the "approval of a judge" before a defendant may proceed by SCI (cf. NY Const, art I, § 2).
"[I]n the case of a constitutional provision like the one before us . . . the writing is the deliberate product of a group of [persons] specially selected for and peculiarly suited to the task of its authorship. It is obvious good sense, under such circumstances, to attribute to the provision's authors the meaning manifest in the language they used. When this language is clear and leads to no absurd conclusion there is no occasion, and indeed it would be improper, to search beyond the instrument for an assumed intent" (People v Carroll, 3 NY2d 686, 689 [1958]).{**32 NY3d at 23}
This case confronts us with no absurd conclusion that would allow a departure from the Constitution's text. The requirement that the waiver be executed in open court in the presence of counsel provides important safeguards: the opportunity for defendants to consult with counsel before signing the form—just as took place here—and the court's observation of the defendant's signature accompanied by counsel. Compliance with the constitutionally-specified waiver mechanism establishes the prima facie validity of the waiver of the right to prosecution by indictment. Absent record evidence suggesting that a defendant's waiver was involuntary, unknowing or unintelligent, the prima facie showing is conclusive. Here, there is nothing in the record to suggest that Mr. Myers did not understand what he was waiving.
Mr. Myers signed a waiver, under oath, in open court, after consulting counsel, and with counsel present at the signing. In that statement, Mr. Myers affirmed that he was aware our Constitution guaranteed him the right to be prosecuted by a grand jury indictment and that he would have the right to testify before that grand jury; that he waived those rights in favor of prosecution by superior court information, and that he did so voluntarily after discussing the facts of his case "as well as the meaning of this waiver" with his attorney. The waiver also set forth the offense with which the superior court information would charge him. In addition, Mr. Myers' counsel signed an affirmation that he had discussed the case and the meaning of the waiver with Mr. Myers, and that counsel was satisfied that Mr. Myers understood "the waiver and its consequences." Those steps satisfied the constitutional requirements. Because those requirements are unique to the waiver of the grand jury right, we have no cause to consider whether the signed waiver, coupled with counsel's affirmation, would constitute the "affirmative showing on the record" of the "intentional relinquishment or abandonment of a known right or privilege" that we require before other rights may be knowingly, intelligently, and voluntarily waived (People v Tyrell, 22 NY3d 359, 365 [2013]).
Accordingly, the order of the Appellate Division should be affirmed.

Rivera, J. (dissenting). A waiver of a fundamental right must be made knowingly, voluntarily, and intelligently, meaning that the defendant acts free of coercion and with a full understanding{**32 NY3d at 24} of the consequences of the waiver and the right thereby relinquished. Asking defendants on the record whether they acted with such understanding constitutes the traditional way courts confirm a waiver's validity. A defendant's waiver of the fundamental right to an indictment by grand jury requires no less attention from the courts. The fact that our Constitution provides for a written waiver as a safeguard against uninformed and invalid waivers does not eliminate a court's duty to ensure that a defendant understands the contents of the writing and the right being waived. A colloquy with a defendant is not merely a "better practice" (see majority op at 
20); it is critical. No waiver is valid absent sufficient judicial inquiry. Therefore, I disagree with the majority that the court here could accept Steven Myers' written waiver without, at the very least, asking him if he understood what he was signing. I dissent.
"The Constitution mandates that no person shall be held to answer for an infamous crime unless upon indictment of the Grand Jury" (People v Pelchat, 62 NY2d 97, 104 [1984], citing NY Const, art I, § 6). "[B]efore an individual may be publicly accused of crime and put to the onerous task of defending . . . from such accusations, the State must convince a Grand Jury composed of the accused's peers that there exists sufficient evidence and legal reason to believe the accused guilty" (People v Iannone, 45 NY2d 589, 593-594 [1978]). A safeguard inherited from English common law, the grand jury serves the "function of assessing the sufficiency of the prosecutor's case" (Pelchat, 62 NY2d at 104), and thereby helps protect against "potentially oppressive excesses by the agents of the government in the exercise of the prosecutorial authority vested in the State" (Iannone, 45 NY2d at 593-594). Indictment by grand jury "has therefore been recognized as not merely a personal privilege of the defendant but a public fundamental right, which is the basis of jurisdiction to try and punish an individual. Infringement of that right constitutes a defect that cannot be waived by a guilty plea" (People v Boston, 75 NY2d 585, 587 [1990] [internal quotation marks and citations omitted]).
A defendant's waiver of indictment by grand jury, like waivers of other fundamental rights, must be made knowingly, voluntarily, and intelligently (see People v Weinberg, 34 NY2d 429, 431 [1974]). It is the responsibility of the court to "make certain [of] a defendant's understanding of the waiver" and ensure "full appreciation of [its] consequences," though "a trial court need not engage in any particular litany or catechism in satisfying{**32 NY3d at 25} itself that a defendant has entered a knowing, intelligent and voluntary . . . waiver" (People v Bradshaw, 18 NY3d 257, 264-265[*4][2011] [internal quotation marks omitted]).[FN1] "After all, the trial court 'is in the best position to assess all of the relevant factors' " (id., quoting People v Callahan, 80 NY2d 273, 280 [1992]).
To fulfill this judicial obligation and ensure that a defendant has acted voluntarily and with the requisite knowledge, we have consistently held that a court must engage in an on-the-record inquiry of the defendant about the fundamental rights encompassed by a waiver (see e.g. People v Sougou, 26 NY3d 1052 [2015] [requiring colloquy before accepting pleas]; People v Henriquez, 3 NY3d 210, 217 [2004] [requiring colloquy before accepting waivers of right to counsel]; Bradshaw, 18 NY3d at 264-265 [requiring colloquy before accepting waivers of right to appeal]; People v Parker, 57 NY2d 136, 141 [1982] [requiring express, verbal confirmation before accepting waivers of right to be present at trial]; Weinberg, 34 NY2d at 431 [discussing the imperative to provide "an effective admonition of the right to be prosecuted by information" before accepting a defendant's waiver of that right; "(o)nce appraised of this right, a defendant is then in a position to execute a knowing and intelligent waiver"]; see also Commonwealth v Pavao, 423 Mass 798, 802, 672 NE2d 531, 534 [1996] ["the critical evidence for determining whether the waiver was made knowingly and voluntarily come(s) directly from the defendant in the colloquy"]).
In the context of accepting guilty pleas, for example, this Court has determined that the record must "affirmatively demonstrate[ ] that defendant understood the consequences of [their] plea, including that [they were] waiving [their] right to trial and to challenge evidence against [them], and that [they] discussed both the plea and [their] sentence with counsel" (Sougou, 26 NY3d at 1055). The trial court must "assure[ ] itself that defendant adequately understood the right that [they were] forgoing" (Bradshaw, 18 NY3d at 265; see also People v Tyrell, 22 NY3d 359, 365 [2013]; People v Ramos, 7 NY3d 737, 738 [2006]).
Our law reflects basic common sense: the only way for a court to confirm that a defendant understands what is being waived,{**32 NY3d at 26} and that it is being waived freely, is to ask the defendant. In recognition of the importance of an appropriate examination, the New York State Unified Court System prepared a model colloquy, which provides for introductory remarks about the waiver, such as "an indictment is issued by a Grand Jury after the Grand Jury has received testimony and other evidence establishing that a person has committed a crime"; questions for defendants, including "[d]o you understand?" "[h]ave you spoken with your lawyer about your case, about waiving your right to be prosecuted by an indictment, and about consenting to be prosecuted by a Superior Court Information?" and "[a]re you satisfied with the services of your lawyer?"; a detailed description of the waiver form; a designated moment in which defendants meet with counsel and then one in which defendants sign the waiver; and queries on voluntariness, including "[h]as anyone threatened you, or forced you, or pressured you to consent against your will?" (NY Model Colloquies, Waiver of Indictment; Superior Court Information Procedure & Colloquy, http://www.nycourts.gov/judges/cji/8-Colloquies/Waiver%20of%20Indictment%20(SCI).pdf [accessed June 20, 2018]).[FN2]
The majority implies that the drafters of the 1974 amendment, by directing that grand jury waivers be written, intended to establish a ceiling on the procedural safeguards of the constitutional right, rather than a floor (majority op at 
22). To the contrary, the written document constitutes only one aspect of ensuring the fulfillment of the drafters' directive that grand jury indictment waivers be "knowing and voluntary" (Governor's Mem introducing amendment to NY Const, art I, § 6, 1973 NY Legis Ann at 6).
Moreover, the drafters had no reason to spell out that trial courts must orally confirm a defendant's understanding of the waiver, since by 1973 it was well established that a colloquy was necessary to ensure that the waiver of a constitutional right was "knowing and voluntary" (see e.g. People v Beasley, 25 NY2d 483, 488 [1969][*5][holding defendants must be "properly asked whether (they) understood the consequences of (their) plea"]; People v Seaton, 19 NY2d 404, 406 [1967] [holding a decision to waive right to counsel "impose(s) a heavy responsibility {**32 NY3d at 27}upon the trial judge. Before accepting the waiver and the guilty plea, (the trial judge) should have questioned (defendant) and satisfied (them)self, first, that (defendant) understood the consequences of (defendant's) waiver"]; People v Duchin, 12 NY2d 351, 353 [1963] [holding that "(w)hen, choosing to be tried by a judge alone, (a defendant) requests a waiver, (they are) entitled to it as a matter of right once it appears to the satisfaction of the judge of the court having jurisdiction that . . . the defendant is fully aware of the consequences of the choice (they are) making"]; Matter of Bojinoff v People, 299 NY 145, 151-152 [1949] [stating that "(i)t is also well established that waiver of such statutory and constitutional rights is occasioned only when the accused acts understandingly, competently and intelligently, the valuation of the competent evidence being for the court" (citations omitted)]; People v Koch, 299 NY 378, 381 [1949] [requiring colloquy before accepting waiver of right to counsel]).
Indeed, the 1974 constitutional amendment was passed five years after the United States Supreme Court decided that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure [they have] a full understanding of what the plea connotes and of its consequence" (Boykin v Alabama, 395 US 238, 243-244 [1969]). Thus, it would have been logical for the drafters to assume courts understood the Supreme Court had charged them with "the utmost solicitude," and that courts would view a colloquy as part and parcel of the written waiver. Indeed, it was long-standing law that
"courts indulge every reasonable presumption against waiver of fundamental constitutional rights and that we do not presume acquiescence in the loss of fundamental rights. A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused . . . .
"This protecting duty imposes the serious and weighty responsibility upon the trial judge of{**32 NY3d at 28} determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record" (Johnson v Zerbst, 304 US 458, 464-465 [1938] [internal quotation marks omitted]; see also Von Moltke v Gillies, 332 US 708, 724 [1948] ["The fact that an accused may tell (the judge) that (the accused) is informed of (the) right to counsel and desires to waive this right does not automatically end the judge's responsibility. . . . A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered"]).
Since that time, we have continued to hold oral inquiries necessary and indeed published a model grand jury indictment waiver colloquy, giving the legislature little reason to review its characterization of a grand jury waiver (see e.g. Callahan, 80 NY2d at 283 [holding "there (wa)s no assurance that the waiver was executed under constitutionally acceptable circumstances" where "(t)here was no record discussion between the court and defendant concerning the waiver. There was not even an attempt by the court to ascertain on the record an acknowledgment from defendant that (they) had, in fact, signed the waiver or that, if (they) had, (they were) aware of its contents," and thus "the record simply d(id) not afford a sufficient basis for concluding that defendant's waiver of (their) right to appeal was knowing, intelligent or voluntary"]).
The majority further implies that the absence of the requirement for "approval of a judge" in article I, § 6, while present in article I, § 2, signifies that the drafters of the 1974 amendment knew how to require a colloquy and chose not to do so (majority op at 
22). Yet article I, § 2 does not explicitly require a colloquy; we inferred that mandate. Moreover, it was between 1938 and 1974 that key jurisprudence developed making an explicit requisite superfluous.
The grand jury continues to serve a vital role in protecting against "potentially oppressive excesses by the agents of the government in the exercise of the prosecutorial authority" (Iannone, 45 NY2d at 593-594; see also William Glaberson, New{**32 NY3d at 29} Trend Before Grand Juries: Meet the Accused, NY Times, June 20, 2004, https://www.nytimes.com/2004/06/20/nyregion/new-trend-before-grand-juries-meet-the-accused.html [accessed June 16, 2018] ["the indications that more suspects are testifying and that many of them are not indicted may mean that the New York grand jury system should become a national model to screen weak cases out of the criminal justice system"]). The drafters of our Constitution considered the waiver of this right a significant enough act to require its [*6]inscription in a written document, in the presence of counsel and in open court. It would undermine the significance of the written waiver if there were any uncertainty that defendant did not knowingly, intelligently, and voluntarily sign it. Thus, the fact that the drafters demanded a written waiver supports, rather than contradicts, the conclusion that a colloquy is necessary to ensure a defendant's comprehension when waiving the right.
The present case demonstrates the importance of that inquiry. While defendant signed a written waiver, nothing in the court transcript demonstrates that defendant in fact discussed that waiver, or the right relinquished thereby, with counsel. Notably, the court did not ask whether counsel had explained the contents of the waiver to defendant, and counsel made no such representation on the record. The court also failed to inquire whether defendant had read the waiver before signing it or understood its contents, but rather simply accepted the waiver and declared that the document met statutory requisites.
Here, because the court failed to ask even one question of defendant to ascertain whether he understood his right to a grand jury indictment, knew the consequences of waiving that right, or comprehended the written waiver, there is no basis to conclude that defendant's waiver was knowing, voluntary, and intelligent. Therefore, defendant's conviction should be reversed.
Chief Judge DiFiore and Judges Stein, Fahey and Garcia concur; Judge Rivera dissents in an opinion in which Judge Feinman concurs.
Order affirmed.

Footnotes

Footnote 1:Although Mr. Myers did not move to withdraw his plea or otherwise raise his present claims in County Court, we review his claims positing jurisdictional defects in the superior court information (see People v Pierce, 14 NY3d 564, 570 n 2 [2010]; People v Boston, 75 NY2d 585, 589 n [1990]).

Footnote 2:Section 195.20 of the Criminal Procedure Law reiterates the constitutional requirements and specifies additional items the written waiver must include. This Court has emphasized that "[a] waiver of indictment and a departure from the constitutional safeguard and procedural sine qua non is available . . . only within the express authorization of the governing constitutional and statutory exception" (People v Trueluck, 88 NY2d 546, 549 [1996]).

Footnote 1:The majority risks distorting this standard, creating a prima facie test that ultimately puts the burden on defendants to show "record evidence suggesting that [their] waiver was involuntary, unknowing or unintelligent" (majority op at 
23).

Footnote 2:Taken to its logical conclusion, the majority's holding makes a court's inquiry unnecessary, thereby rendering the model colloquy useless. Given that fact, the majority's suggestion that it would be "better practice" to engage in the model colloquy only serves to create uncertainty and confusion (majority op at 
20).